25 F.(2d)—55½

**BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, SOUTHERN PAC. LINES IN TEXAS AND LOUISIANA, et al. v. TEXAS & N. O. R. CO. et al.**

District Court, S. D. Texas, at Houston.
April 19, 1928.

No. 314.

1. **Injunction** ⊂⇒99—Court may enjoin railroad from violating law providing for representatives to settle disputes between railroads and employees (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]).

Court has equitable power to protect from invasion right granted employees by Congress under Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), to select their own representatives in labor disputes without interference by enjoining railroad from violating this law.

2. **Constitutional law** ⊂⇒48—Courts must, wherever, possible, holds acts of Congress virile and constitutional, and give right claimed under act effective protection.

It is duty of court, wherever possible, to hold acts of Congress virile, rather than sterile, constitutional, rather than unconstitutional, and, where right is claimed under act of Congress, to give it effective protection, especially where those who contest right do so on arbitrary or interested grounds.

3. **Master and servant** ⊂⇒16—Law providing for representatives to settle disputes between railroads and employees held constitutional (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]).

Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), providing for designation of representatives by railroads and employees for purpose of settling labor disputes without interference, influence, or coercion exercised by either party over self-organization or designation of representatives by the other, held, constitutional.

4. **Injunction** ⊂⇒99—Clayton Act does not prevent injunction restraining railroad from violating law providing for selection of representatives in labor disputes (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]; Clayton Act [38 Stat. 730]).

Clayton Act (38 Stat. 730) does not prevent injunction restraining railroad company from violating Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), providing for selection of representatives for settlement of labor disputes without interference, influence, or coercion.

In Equity. Suit for injunction by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Southern Pac. Lines in Texas and Louisiana, and others against the Texas & New Orleans Railroad Company and others. A temporary injunction was issued, and defendants move to dissolve and vacate

same. Motion to dissolve denied, and decree rendered making injunction perpetual.

See, also, 24 F.(2d) 426; 25 F.(2d) 876.

Fulbright, Crooker & Freeman, of Houston, Tex. (C. G. Stearns and J. H. Crooker, both of Houston, Tex., of counsel), for plaintiffs.

Baker, Botts, Parker & Garwood, of Houston, Tex. (J. H. Tallichet, Clarence Carter, and C. R. Wharton, all of Houston, Tex., of counsel), for defendants.

HUTCHESON, District Judge. The court having in this cause on July 29, 1927, issued a temporary injunction, and on February 11, 1928, a contempt order, defendants thereafter filed their motion to dissolve and vacate both. Thereafter, on March 12, 1928, the cause came on for final hearing on the merits, at which time full evidence and arguments were presented and heard, and the matter now stands for disposition of the defendants' motions above and on the merits, of plaintiffs' prayer for permanent injunction.

On this hearing the evidence more abundantly even than on the previous hearings established a deliberate disregard and violation of the terms of the statute, and, after its issuance, of the temporary injunction, by the defendant company through a calculated and studied interference, both with the self-organization, and the designation of representatives by the employees.

In addition, the genesis and motive of the entire activity of the defendants in organizing, promoting, and maintaining the association, and in endeavoring to disrupt and unseat the Brotherhood as representatives, is made clear and plain through a letter written by Mr. Lull, one of the defendants in the contempt proceeding and vice president of the railroad company, to Mr. McDonald, its president on May 24, 1927, prior to the activities complained of in this suit.

That letter in brief declared that there was pending from the general committee of the national organization of the Brotherhood of Railway Clerks a request for an increase of 10 cents per hour; that it was practically certain, if the matter went to arbitration, an award would be rendered increasing the pay roll $340,000 per annum; that he proposed to refuse arbitration upon the question of the right of the Brotherhood to represent the employees, and stated: "This will permit us to get away from the interference of this organization, and if successful in this, I am satisfied we can make settlement with our own employees at a cost not to exceed $75,-000 per annum."[1]

---

[1] Houston, Texas, May 24, 1927.

Mr. A. D. McDonald, President, New York City, N. Y.—Dear Mr. McDonald: Order of Railroad Telegraphers. In the case of clerical and station service employees the general committee of the National Organization of the Brotherhood of Railway Clerks filed, on November 2, 1925, a request for increase of 10 cents per hour. The granting of this request would involve an increase pay roll expense of approximately $773,000, or about 20 per cent., for the classes of employees involved. Conferences were held with the committee, but no agreement could be reached, as we did not feel that there was any proper basis for the increase asked for. In January, 1926, the organization filed the case with the United States Railroad Labor Board, and it was pending before the Labor Board at the time the board was abolished by the Railway Labor Act.

Following the abolition of the Labor Board further conferences were held with the organization committee, but no agreement could be reached, and the organization has invoked the service of the United States Board of Mediation. In the recent arbitration case on the lines west of El Paso, the arbitrators awarded large increases, the majority of the clerical employees being awarded an increase of 5 cents per hour.

As our average rates for clerks are considerably lower than those on the Pacific Lines, we could not expect any more favorable decision in case this matter went to arbitration, and to apply on the lines east of El Paso the award rendered in the Pacific Lines case would mean an increased pay roll cost of approximately $340,-000 per annum.

From the best information we are able to obtain, the majority of our clerical and station service employees do not belong to the national organization, and is is our intention, when handling the matter in mediation proceedings, to raise the question of the right of this organization to represent these employees, and, if arbitration is proposed, we shall decline to arbitrate on the basis that the petitioner does not represent the majority of the employees. This will permit us to get away from the interference of this organization and if successful in this, I am satisfied we can make settlement with our own employees at a cost not to exceed $75,000 per annum.

One of our neighboring roads, the Kansas City Southern, recently had a similar situation and declined to go into arbitration with an organization that did not represent a majority of its employees. The question of going into arbitration on any and all requests that are presented by miscellaneous classes of employees has been discussed with the managers of a number of railroads in the Southwest and it is the concensus of opinion that the lines should decline to arbitrate these matters, as there is no legal obligation to do so, and that these requests will continue to be presented in even greater numbers until the lines take a firm stand against arbitrating matters that should be settled in direct negotiation between the individual railroads and its employees.

Yours truly,    [Signed]  H. M. Lull.

Every proceeding taken thereafter sprang from and may be read in the light of this program, which explains the vigorous and determined effort to seat the company union as the sole representative of the employees, and gives full color to the persistent efforts thereafter to destroy the influence and activity of the Brotherhood. It may therefore be affirmatively and easily found here that the fact findings made on the two preceding hearings before this court, that the defendant company was acting in direct and open disregard of the provisions of the statute, should be, without hesitation reaffirmed.

[1-3] The defendants say, however, that, conceding these findings to be correct, they furnish no basis for injunctive relief. They say the statute which they are disregarding is a mere congressional gesture, has not the force of law, confers no rights, imposes no penalties, provides no remedies, and that the case stands here as did the case of Pennsylvania Federation v. Pennsylvania R. R. Co., 267 U. S. 204, 45 S. Ct. 307, 69 L. Ed. 574.

They argue that the Supreme Court in that decision has determined the very question here, that it has construed a statute having equivalent terms with this as inoperative, and not enforceable by court decree, and that that decision controls this case. That they are in error as to the effect of that case I think entirely plain. What was decided there was that the decisions of the Labor Board could not be enforced by injunction; the court saying:

"What the complainants here are seeking to do is to enforce by mandatory injunction a compliance with a decision of the Board, not based on the legal rights of the parties, but on its judgment as to what legal rights the disputants should surrender or abate in the public interest. Such a remedy by injunction in a court it was not the intention of Congress to provide."

What the complainants are seeking here to enforce is the century-old right of representation, a right granted to the employees by Congress in mandatory language, that they should select their own representatives without interference by the Railroad Company. This and nothing more is here attempted, and I think it plain that the question is res integra and has never been before adjudicated, except in the preliminary opinion in this case.[2]

So viewing it, I believe that in such a case as made here, from the maxim "ubi jus, ibi remedium" springs the equitable power in this court to protect this most reasonable right granted by Congress from invasion. The passage of this act (44 Stat. 577 [45 US CA §§ 151–163]) followed the decision in 267 U. S., supra, and in it Congress made effective as law principles which in Pennsylvania R. Co. v. Labor Board, 261 U. S. 72, 43 S. Ct. 278, 67 L. Ed. 536, the Supreme Court had approved as sound, but in 267 U. S. had declared unenforceable as law, because not expressed in acts of Congress, but merely in decisions of the Labor Board.

It is the duty of this court, wherever possible, to hold acts of Congress virile rather than sterile, constitutional rather than unconstitutional, and, where a right is claimed under an act of Congress, to give it effective protection, especially where those who contest this right do so on arbitrary or interested grounds. I recognize that the case in its legal aspects is not without difficulty, but, feeling that that difficulty arises, not out of any weakness in the underlying principle here invoked, that where Congress has granted a right the court may protect that right by its injunction, but out of the doubt raised by defendants as to whether Congress has merely stated a correct principle, without establishing it as a right, that doubt I believe it my duty to resolve in favor of congressional virility.

Upon the other point presented by counsel, that the statute, if operative, is unconstitutional, I have no difficulty at all. Reason and authority alike declare and approve the existence of such legislative power in Congress, and I am satisfied to rest the matter on the opinion heretofore rendered is this cause.[3]

[4] Nor is the suggestion that the Clayton Act (38 Stat. 730) prevents this injunction of any force, if the assumption on which I have proceeded, that Congress, in view of the established custom of collective bargaining which has existed for many years, has conferred a right on the employee in interstate commerce that he shall be truly represented by those who bargain for him, is sound. It is just as much a property right of an employee to work in interstate commerce under a guarantee granted to him by Congress, that his wages and working conditions shall not be fixed for him without representation, as it is for an employer to have the right to continue operations in interstate commerce protected from activities of persons who would seek to prevent that

---

[2] Opinion, Brotherhood of Railway Clerks v. Texas & N. O. R. R. Co., 24 F.(2d) 426.

[3] See Opinion, Brotherhood of Railway and Steamship Clerks et al. v. Texas & New Orleans R. R. Co. et al. (D. C.) 24 F.(2d) 426.

operation, by inducing persons not to work for them. Both rights are imponderable and intangible, but neither less real and substantial than the other.

Finding no reason to believe that there was error in the granting of the preliminary injunction, and believing that that injunction should be made permanent, the motion of defendants to dissolve the temporary injunction will be denied, and a decree will be approved, making it perpetual.

