BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, SOUTHERN PAC. LINES IN TEXAS AND LOUISIANA et al. v. TEXAS & N. O. R. CO. et al.

District Court, S. D. Texas, at Houston. April 19, 1928.

No. 314.

1. Injunction ☞223(1)—Railroad, promoting organization of employees' association, violated injunction restraining its violating law providing for selection of representatives in labor disputes (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]).

Railroad, promoting organization of employees' association hostile to organized labor unions and recognizing it as representative of employees, *held,* to have violated injunction restraining it from violating Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), providing for selection by parties to labor disputes of representatives without interference, influence, or coercion exercised by either party over self-organization or designation of representatives by the other.

2. Injunction ☞230(4)—Contempt order that railroad disestablish employees' association it promoted, and not to recognize it as representative, did not go further than injunction (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]).

Contempt order directing railroad to disestablish association of clerk employees as then constituted, which railroad had promoted, and directing railroad not to recognize it as representative as then constituted and established, *held,* not to go further than injunction restraining railroad from violating Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), providing for selection of representatives for settlement of labor disputes without interference, influence, or coercion.

3. Injunction ☞230(4)—Contempt order restoring employees discharged did not go further than injunction restraining railroad's violating law regarding selecting representatives for disputes (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]).

Contempt order, directing restoration of employees discharged because of activities on behalf of employees' association, *held,* not to go further than injunction restraining railroad from violating Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), providing for selection of representatives for settlement of labor disputes by promoting another organization of employees' association, but order was merely an act of restoration of status, commanded in order to wipe out effects and results of disobedience.

4. Injunction ☞230(4)—Contempt order re-establishing brotherhood as representative of employees after railroad violated injunction should be changed to permit employees to select representative by secret ballot or otherwise (Railway Labor Act, § 2, par. 3 [45 USCA § 152, par. 3]).

Where railroad, by promoting organization of employees' association, violated injunction restraining it from violating Railway Labor Act, § 2, par. 3 (45 USCA § 152, par. 3), providing for selection of representatives for settlement of labor disputes without interference, contempt order re-establishing brotherhood as representative of employees until employees should choose another representative by secret ballot, should be changed to permit employees to select another representative by secret ballot or by other means.

In Equity. Contempt proceeding by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Southern Pacific Lines in Texas and Louisiana and others against Texas & New Orleans Railroad Company and others. Contempt order was entered and defendants moved to vacate or modify the order. Motion to vacate denied, and order modified.

Fulbright, Crooker & Freeman, of Houston, Tex. (C. G. Stearns and J. H. Crooker, both of Houston, Tex., of counsel), for plaintiffs.

Baker, Botts, Parker & Garwood, of Houston, Tex. (J. H. Tallichet, Clarence Carter, and C. R. Wharton, all of Houston, Tex., of counsel), for defendants.

HUTCHESON, District Judge. This is a motion to vacate or modify a contempt order entered in this court on February 11, 1928, upon the grounds and for the reasons set out in the report of this cause in 24 F.(2d) 426.

Defendants contend: (1) That the injunction was improvidently granted. (2) That the defendants did not violate the injunction. (3) That the contempt order exceeded the power and jurisdiction of this court.

The first point, in connection with the trial on the merits, I have considered and disposed of adversely to defendants by making a temporary injunction heretofore issued permanent. See opinion, Brotherhood of Railway and Steamship Clerks, etc., et al. v. Texas & N. O. R. R. Co. et al. (D. C.) 25 F. (2d) 873.

[1] The second point, that the injunction was not violated, I think wholly untenable. It seems to be rested by counsel upon an entire misapprehension of the terms of the statute, and a failure to appreciate its effect and scope as a continuing obligation. Its corrective force may not be defeated by an act or series of acts. If it has any virtue, it protects an employee in his right to self-organization, and the selection of his representatives always. There never comes a time under that statute when the defendant perfects the right to force upon employees any representative of their choosing, whereas here the record teems with evidences not only of contracts between the railroad company and the association for sole representation, but of continuing acts on the part of the company designed and tending to disrupt, disintegrate, and destroy the brotherhood, while establishing in the seats of the mighty the association.

One of the association's chairmen, all of whom are chief clerks to the management, testified that the growth of the association had been due to its recognition by the railroad and the refusal to recognize the brotherhood, and he naively remarked that if this suit went in favor of the company, the association would be able to take complete control, whereas, if it went the other way, the association would fall; while others testified that, if left to a vote uninfluenced by the company the employees would not select the association as representative, while all the other testimony established the continuing character of the interference by the defendant company, in the support and maintenance of the company union for its benefit and advantage and the barring out of any and all other representation.

While I think the continuing character of the obligation not to interfere which the statute imposes on the company completely refutes defendants' position, and that this is so plain as not to admit of argument, upon the further ground that the matter was not a fait accompli when the injunction was issued, but had only begun, and that the effective interference with self-organization and the designation of representatives which really made itself felt occurred after the injunction was issued, this contention must be denied. See Texas & New Orleans R. R. v. North Side Railway, 48 S. Ct. 361, 72 L. Ed. —— (April 9, 1928).

[2, 3] As to the defendants' complaint that the contempt order has gone further than the injunction, and that the court has thereby assumed a jurisdiction beyond the terms of the statute, I think it sufficient to say that the contempt order has done nothing more than in the recognized jurisdiction of the court, to restore the status quo ante, except in one particular which will be later noted. So clear is this power to restore the status that it has even been held that where a defendant with notice of the filing of a bill of injunction proceeds to complete the act sought to be enjoined, the court may, by mandatory injunction, compel the restoration of the status quo. Texas & New Orleans R. R. v. North Side Belt Ry., 48 S. Ct. 361, 72 L. Ed. ——, April 9, 1928.

In directing the railroad to disestablish the Association of Clerical Employees as it is now constituted as the recognized representative of the clerical employees of the railroad company, the court merely restored the status which existed at the time of the granting of the injunction, at which time this association was in the process of formation, its representative character had not been established, and since that association had been formed and promoted by the interference of the defendant company, and its recognition brought about as the effective act in such interference in violation of the injunction, the court properly directed the railroad company not to recognize it as representative as presently constituted and established, leaving open to the employees the right by secret ballot, or by any other way they desire, uninfluenced by dictation or interference by the defendant company, to select the association, if they chose, as their representative.

As to the restoration of Harper, Walker, Stotzer, Hudson, and Ginsberg, this also was merely an act of restoration of status, commanded in order to wipe out the effects and results of disobedience. Nothing in the order attempted to, nor could it, fix any time or conditions to the continuing in place of these persons. It merely declared that the severance of these relations and the disturbance of the status quo as to them, which the court found from the evidence had been brought about through a deliberate violation of the injunction order of the court, must be undone, and inferentially that it should not occur again for the same or similar reasons. [4] The particular in which the contempt order is perhaps subject to criticism, and should be modified, is that part of it which, after restoring the brotherhood to their undoubted status quo as representative of the employees, established both by contract of the company with them and the undisputed proof, undertook to limit to the taking of a secret ballot the processes under which this status quo could be changed. This limitation

was drawn, not only from the established practice and ruling of the labor board, but from the letter of the railroad company through Torian, its representative, dated November 14, 1923, and thereafter acted upon:

"In conference yesterday I advised that the carrier would comply with decision 1971 of the United States Labor Board, and recognize the organization of the Brotherhood of Railway and Steamship Clerks until such time as the majority of the clerical employees, by secret ballot, select other representation."

In view, however, of the statement by defendants during the trial of this case of that understanding, and the position taken by them that they do not believe that a secret ballot is a fair method of determining representation, I believe that that provision in the contempt decree, No. 3 thereof, should be modified by adding after "secret ballot," or in any other manner decided by themselves, so that that provision of the contempt order will hereafter read: "Reinstating and re-establishing the said brotherhood as the representative of the clerical employees in all matters relating to their employment by the said railroad company, disputes as to pay, working conditions, etc., substantially as said status was on June 1, 1927, until such time as said clerical employees by a secret ballot taken in accordance with the further directions of this court, or by any other means of selection which the employees themselves may decide upon and adopt, and without the dictation or interference of the said Texas & New Orleans Railroad Company, H. M. Lull, G. S. Waid, or J. C. Torian, shall choose another representative or representatives."

As so modified, nothing in the order of February 11 in the slightest manner interferes with or prevents the lawful management and operation of the railroad by the defendant company. Nothing interferes with or prevents the employment or discharge of its employees in the legal and proper course of its business. Nothing in the decree requires the railroad company to recognize the brotherhood any longer than such time as its employees, or some of them, in the exercise of the right granted them by the act, shall see fit to have the brotherhood represent them, with the full right in the employees, or any amount of them, either by secret ballot under the direction of the court, or in any manner which they may determine, to select another or other representative.

The status restored was disturbed by the railroad company, in violation of the law and of the injunction. From disturbing this stat-

us the railroad was and is expressly enjoined by the statute and the order of this court. The employees, however, not only have the right, but the right is expressly recognized in them, to appoint and establish any representative or representatives they may choose, the association, or any other, so long as, and provided only, that the railroad takes no part nor parcel in this selection.

If the company has the right under the law to compel the employees to deal with it through an association organized, promoted, fostered, and maintained by the defendant company, as the Supreme Court held, under the law then existing, the Pennsylvania Railroad had the right to do, then, of course, the injunction issued by this court ought not to have been issued, and, being issued, ought to be set aside. But, if the employees have the right, which the statutes here say they have, to freedom in the matter of self-organization and the selection of representatives from interference, influence, or coercion on the part of the defendant company, then the injunction has done no more than to insist upon that right, and the contempt order no more than to make that injunction effective.

From these views, it follows that the request to modify the contempt order in the matter of making a secret ballot the exclusive means of determining representation is granted, and that the contempt order, as so modified by the insertion of the additional means for the selection of representatives, as hereinabove set out, is affirmed and continued in full force, and the motion to vacate and dissolve it is denied.