GUS ANGELOS et al., Copartners under the Name of THE WORLD CAFETERIA, Respondents, *v.* WILLIAM MESEVICH, Individually and as President of the Cafeteria Employees Union, Local 302, et al., Appellants.

Argued October 19, 1942; decided January 21, 1943.

*Louis B. Boudin* and *Irving R. Feinberg* for appellants. The judgment invades appellants' rights under the Federal and State Constitutions. (*Senn* v. *Tile Layers Protective Union*, 301 U. S. 468; *Thornhill* v. *Alabama*, 310 U. S. 88; *A. F. of L.* v. *Swing*, 312 U. S. 321; *Bakery & Pastry Drivers* v. *Wohl*, 315 U. S. 769; *People* v. *Muller*, 286 N. Y. 281.) The case presents a " labor dispute " within the meaning of section 876-a of the Civil Practice Act. (*Kershnar* v. *Heller*, 258 App. Div. 751; *Saito* v. *Waiters & Waitresses Union, Local 2*, 12 N. Y. S. [2d] 283; *Boro Park Market* v. *Heller*, 256 App. Div. 588; 280 N. Y. 481; *Baillis* v. *Fuchs*, 283 N. Y. 133.) Respondents were not entitled to an injunction since the defendant labor union was clearly in pursuit of a legitimate labor union objective. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260; *Milk W. D. Union* v. *Lake Valley F. Products*, 311 U. S. 91; *Nann* v. *Raimist*, 255 N. Y. 307.) The record establishes lack of good faith in forming the alleged partnership and that the employer-employee relationship continued between the former employer and the other plaintiffs after the signing of the alleged partnership agreement. (*Saito* v. *Waiters & Waitresses Union, Local 2*, 12 N. Y. S. [2d] 283.) The trial court committed reversible error by in effect refusing to try the issue of the *bona fides* of the alleged partnership.

*David L. Delman* for respondents. None of the provisions of section 876-a of the Civil Practice Act are applicable to the plaintiffs and under no theory can it be said that a labor dispute exists or existed at the place of business of the plaintiffs or between them and the defendant. (*Thompson* v. *Boekhout*, 273 N. Y. 390; *Luft* v. *Flove*, 270 N. Y. 640; *Miller* v. *Fish Workers Union*, 11

N. Y. S. [2d] 278; *Jenkins* v. *Moyse*, 254 N. Y. 319; *Stalban* v. *Friedman*, 11 N. Y. S. [2d] 343; *Boro Park Sanitary Live Poultry Market Inc.*, v. *Heller*, 280 N. Y. 481; *Kershnar* v. *Heller*, 14 N. Y. S. [2d] 595.)

RIPPEY, J.   After due trial of issues framed according to our practice, the Supreme Court, on the equity side, made findings of fact and conclusions of law upon which it granted a permanent injunction restraining and enjoining the defendants " from stationing pickets at or near the plaintiffs' place of business at 838 East 180th Street, Borough of the Bronx, City of New York, and from interfering with the plaintiffs' customers who may seek to enter their place of business, or to prevent by coercion or otherwise any customers of the plaintiffs seeking to enter plaintiffs' place of business, and from interfering in any other wise with the plaintiffs' business."   Since the findings of fact were based upon sufficient evidence to support them, and the Appellate Division has affirmed the decree and made no new findings of fact, the findings of fact made by the trial court are not open for review by the Court of Appeals (Civ. Pr. Act, § 605), nor are we permitted to make new and additional findings of fact to form a basis to sustain the contention of the defendants.   We must take the findings as made and determine the questions of law raised thereby.

The action was brought to restrain defendants from picketing plaintiffs' premises and business and from illegally interfering with and injuring that business.   There is nothing within the allegations of the complaint which brings the action within the provisions of section 876-a of the Civil Practice Act of this State.   For that reason, among others, defendants contend that the judgment below must be set aside.   The primary and principal issue litigated at the trial as raised by the answer was whether a " labor dispute " existed between the parties within the meaning, purpose and intendment of that act as construed by our State courts.   To support defendants' contention, they argue that a labor dispute existed between the plaintiff Loizides, who is claimed to have been operating a cafeteria at the location above specified with various non-union employees prior to April 22, 1939, and the defendants, and that such dispute held over and continued between the plaintiffs in

this action and the defendants subsequent to that date. There are no findings of fact to support any such contention. The facts as found show that the defendants established a picket line at and near the cafeteria on or about April 15, 1939. On April 22, 1939, the plaintiffs in this action formed a partnership in accordance with the provisions of our partnership statute (Partnership Law, Cons. Laws, ch. 39) and filed a certificate as required by law that it was conducting business at the place indicated as " The World Cafeteria." Subsequently this action was commenced. Defendants sought to show that the partnership was a fraud and sham and not a *bona fide* partnership, that only one individual owned and operated the business, and that the other plaintiffs were merely employees. Upon conflicting evidence it has been found as matters of fact, conclusively binding on this court, that the plaintiffs were partners and, as such, sole owners and operators of the cafeteria, that the partnership was a valid partnership, and that plaintiffs as members of the partnership did all the work in connection with said cafeteria without any outside assistance. The trial court refused to find as requested by defendants, that the partnership was a fictitious arrangement among the plaintiffs entered into solely for the purpose of avoiding the unionization of the World Cafeteria and of applying to the court for an injunction restraining the defendant union from picketing the cafeteria, and that refusal to find has necessarily been approved by the lower court upon appeal. It has been specifically found that there was no " labor dispute " between the plaintiffs and any employees, or between the plaintiffs and the defendants, within the purview of section 876-a of the Civil Practice Act, that no employee of the plaintiffs ceased working because of any dispute as to the rate of wages or any other acts of the plaintiffs, and that no strike has ever been called at the plaintiffs' place of business. The mere fact that no strike has been called does not make the picketing unlawful. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260, 263.) Nevertheless, there can be no labor dispute within the meaning of section 876-a unless there is employment. (*Baillis* v. *Fuchs,* 283 N. Y. 133, 137.) Upon the facts as found in this case, the partnership comes within the reasoning of and is controlled by the decision in *Thompson* v. *Boekhout* (273 N. Y. 390). The partnership was not a legal entity in the sense that its

members were employees as in the case of a corporation. (*Borough Park Sanitary Live Poultry Market, Inc.,* v. *Heller,* 280 N. Y. 481.) The findings in this case give us no information as to whether the objective of the defendants was proscribed as in *Opera on Tour, Inc.,* v. *Weber* (285 N. Y. 348) or lawful as in *Wohl* v. *Bakery & Pastry Drivers & Helpers Local 802* (284 N. Y. 788, revd. 315 U. S. 769). Had the court found, as requested by the defendants, that the partnership was formed to avoid the establishment of a picket line with men walking up and down in front of the place, it would not have changed the result. (Cf. *Jenkins* v. *Moyse,* 254 N. Y. 319.) Accordingly, the action rests upon the principles of the common law without preliminary compliance with the provisions of section 876-a of the Civil Practice Act required.

It has been found by the lower courts that the picketing of the World Cafeteria was at all times orderly and peaceful and that no acts of violence had been threatened or committed by the defendant union. The defendants had the constitutional right accurately and truthfully and without violence, force or coercion, or conduct otherwise unlawful or oppressive to make their grievances known to the public. (*Wohl* v. *Bakery & Pastry Drivers & Helpers Local 802, supra.*) But a citizen is not required to tolerate peaceful picketing accompanied by untruthful representations, interference with his business or coercive conduct designed to injure or destroy his business whether a labor dispute exists or not. (*Busch Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150; *Wohl* v. *Bakery & Pastry Drivers & Helpers Local 802, supra.*) Unlike the record in the *Wohl* case, there are findings of fact here to sustain the decree. In this case it has been found that individuals under the control of the defendants have been picketing the plaintiffs' cafeteria, bareing false and misleading signs that tend to create the impression that the plaintiffs are unfair to organized labor and that the pickets were previously employed by the plaintiffs, which representations were false and known by the defendants to be false, since there were no employees at the place of business of the plaintiffs and the plaintiffs were not unfair to organized labor; that such pickets approached prospective customers of the plaintiffs and told them that the plaintiffs' restaurant was giving bad food, and that by patronizing

said restaurant they were aiding the cause of Fascism; and that the pickets directed customers about to enter the plaintiffs' place of business to a cafeteria across the street which was a competitor of the plaintiffs. By no authoritative decision has it been held that such conduct is not subject to judicial restraint. On the contrary, unlawful and coercive conduct will be enjoined where it has been found that such conduct has caused damage and will cause irreparable damage if permitted to continue and the party who is so damaged or threatened to be damaged has no adequate remedy at law. (*Busch Jewelry Co.* v. *United Retail Employees' Union*, *supra*, p. 156.)

No exceptions appear in the record which raise any other question of law open for our further consideration.

The judgment should be affirmed, with costs.

DESMOND, J. (dissenting). The judgment should be reversed and the complaint dismissed. The issuance of an injunction in a case like this is positively forbidden by section 876-a of our Civil Practice Act, by the decisions of this court and by the decisions of the United States Supreme Court construing the free speech guaranty of the Constitution of the United States.

Plaintiff Loizides owned a restaurant. The other six plaintiffs were his employees. Defendant union tried to negotiate a collective bargaining agreement with owner Loizides. Loizides refused to negotiate. Beyond any doubt there was then and there a labor dispute. The union, believing — and surely not being without good reason for that belief — that it had a settled and absolute right to advertise to the public the grievance it claimed to have, began to picket the restaurant. The " picket line " consisted of *just one picket*. The Trial Justice has specifically found that the one-man picketing " was at all times orderly and peaceful," that " no acts of violence have been threatened or committed by the defendant union," that " the picket on the picket line * * * requested the public not to patronize said cafeteria since it was unfair to union labor, and made no other statements or representations." If the picketing described in those findings, herein quoted verbatim, is unlawful, then picketing has been absolutely and completely outlawed in this State.

Owner Loizides, for the express and admitted purpose of removing the one-man picket line from in front of his restaurant, called together his six employees and with them signed a document which made them all his partners. Having thus completely changed the aspect of his enterprise, Loizides, with all his newly-minted partners joined as co-suitors, demanded of the court of equity that defendants be forthwith and forever enjoined from picketing the cafeteria. Section 876-a troubled Loizides not at all. He and his erstwhile workers, he explained to the court, were now co-equals and co-proprietors, and so, he argued, there could not be any " labor dispute " between the plaintiffs and the defendant union. Any " labor dispute " there might have been in the pre-partnership days, plaintiffs told the court, came to a full and final stop when the six employees, without leaving their posts or doffing their uniforms, assumed the roles of partners. Through such a device and on such an argument has the owner of this restaurant secured an injunction which in so many words prohibits any picketing of any kind whatever. No such injunction can be countenanced by this court. To affirm that injunction we must hold that this is not " a case growing out of a labor dispute." (Civ. Pr. Act, § 876-a.) Such a holding is impossible. Whether we take the allegations of the complaint, the admitted facts, the trial court's findings or any or all of them, the complaint must be dismissed.

True, there are no findings that the dispute which concededly existed before the picketing began on April fifteenth and concededly continued until the partnership agreement was signed, held over and continued after the partnership had sprung into being on April twenty-second. But Loizides himself testified that he adopted the partnership plan to stop the picketing. What finding was necessary after that frank admission? There is no dispute of fact here. The injunction depends solely on an impossible construction of the law.

We are told that this action rests not on section 876-a, but on the principles of the common law. There is no point in reviewing the numerous decisions of this court in recent years denying the power to issue injunctions against peaceful, orderly picketing without threats or intimidation in bona fide labor disputes. Any common law of this State holding to the contrary must date back

before *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* (245 N. Y. 260), *Stillwell Theatre, Inc.,* v. *Kaplan* (259 N. Y. 405) or *J. H. & S. Theatres, Inc.,* v. *Fay* (260 N. Y. 315), all of which cases antedate the enactment of section 876-a and all of which are positive in their affirmations of the right to picket peacefully.

Even if this injunction were not unlawful under section 876-a and under our decisions, early and late, even if there were no labor dispute and no case growing out of a labor dispute, this ban against peaceful picketing would still be violative of the Federal Bill of Rights. Most plainly is this pointed out in *Bakery & Pastry Drivers & Helpers Local 802* v. *Wohl* (315 U. S. 769), where the Supreme Court noted (p. 774) that the New York courts had seemed to assume that the legality of the injunction followed from a determination that a labor dispute was not involved. " Of course," said the Supreme Court " that does not follow: one need not be in a ' labor dispute ' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive." (See, also, *Thornhill* v. *Alabama*, 310 U. S. 88, 100; *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.*, 312 U. S. 287, 296–298; *American Federation of Labor* v. *Swing*, 312 U. S. 321.) Nothing is now better settled than that picketing is an exercise of the constitutional right of free speech, that it needs no authorization from the State, which may in proper case regulate picketing, but may never forbid it.

The Supreme Court decisions just cited make it unnecessary to deal extensively with *Thompson* v. *Boekhout* (273 N. Y. 390), wherein this court declared the absence of a labor dispute in a case where the owner of a small business decided to run it without any employees at all. The constitutional question was not there raised. Incidentally, this court later made plain that the *Thompson* v. *Boekhout* ruling was to be limited to its special facts, for in *Boro Park S. L. P. Market, Inc.* v. *Heller* (280 N. Y. 481) this court decided that a labor dispute did exist with defendant union though all those employed in plaintiff's business were stockholders of plaintiff corporation. Here Loizides did not discharge his employees and thereafter do all the work himself. He conferred a new status on their labors by drawing up a partnership agreement, which,

while " valid " as the court held, was nevertheless a device (see *Matter of Scott* v. *Miller*, 285 N. Y. 760) to keep out the union while retaining the same services of the same workers as " partners."

We have not overlooked findings of fact numbered Fourth and Tenth. The first of these charges the picket with " bearing false and misleading signs that tend to create the impression that the plaintiffs are unfair to organized labor, and also tend to create the impression in the eyes of the public that these pickets were previously employed by the plaintiffs." Actually the picketing signs said nothing about a strike or a previous employment; they simply announced (according to plaintiff Loizides): " This place is unfair to organized labor, please help us." Such statements cannot be enjoined. (*Wilner* v. *Bless*, 243 N. Y. 544; *Nann* v. *Raimist*, 255 N. Y. 307.) The Tenth finding is that the picket told prospective customers of the cafeteria that the cafeteria served bad food and that by patronizing it customers " were aiding the cause of Fascism." But there is another finding (Twenty-third) above referred to, which states positively that the picket " requested the public not to patronize said cafeteria since it was unfair to union labor, and made no other statements or representations." The Tenth and Twenty-third findings are obviously irreconcilable and, applying as we must the settled rule that, where there are conflicting findings, appellants get the benefit of the findings most favorable to them, we ignore the Tenth finding. Of course, even were that finding binding on us, the complaint would still have to be dismissed for non-compliance with section 876-a.

In this small lawsuit there is at hazard, just as surely as in great strifes that sweep the world, an ancient and inalienable right. If that right cannot find vindication in the courts, it has little chance elsewhere.

The judgment should be reversed, and the complaint dismissed, with costs.

FINCH LEWIS and CONWAY, JJ., concur with RIPPEY, J., DESMOND, J., dissents in opinion in which LEHMAN, Ch. J., and LOUGHRAN, J., concur.

Judgment affirmed.