LOUIS SINGER et al., Suing on Behalf of Themselves and for All Other Persons in the Business of Selling Soft Drink Beverages in the Borough of Brooklyn, Plaintiffs, *v.* KIRSCH BEVERAGES, INC., et al., Defendants.

Supreme Court, Special Term, Kings County, July 15, 1946.

*Abraham Ralph Kartzman* for plaintiffs.

*Cowin & Whitehorn* for Kirsch Beverages, Inc., defendant.

*William B. Herlands* for Geo. Schneider Association, Inc., defendant.

*Leo Greenfield* for Jacob Engar, as President of Soft Drink Workers Union, Local No. 812, and others, defendants.

Nova, J. Plaintiffs move for a temporary injunction. The defendant union makes a cross motion to dismiss the complaint as insufficient in law and upon the ground that the court lacks jurisdiction of the subject matter of the action.

The complaint alleges in substance that all of the plaintiffs are in the business of distributing seltzer and soda water as a one-man business, purchasing the soda from the various defendant manufacturing companies in lots of ten, twenty or thirty boxes, and selling and delivering same to the homes of the consuming public; that each of the plaintiffs depends upon the income from such business to maintain himself and his family; that plaintiffs employ no helpers but each owns and drives his own truck, owns his seltzer bottles, and is in no way connected with any of the defendants and that none of the plaintiffs have ever had occasion to hire any helper or help from the membership of the defendant union; that there is no relation of " employer " and " employee " between any of the plaintiffs and any of the defendants herein.

It is further alleged that all of the defendants and others whose names at this time are unknown to plaintiffs have formed a conspiracy and have entered into an agreement not to sell soft drink beverages to the plaintiffs unless and until plaintiffs join the defendant Soft Drink Workers Union, Local 812, New York City, of the International Brotherhood of Teamsters, affiliated with the American Federation of Labor; that the various soda manufacturers have joined into an association known as Five-Boroughs Carbonated Beverage Manufacturers Association, Inc., and said association entered into a contract of employment on behalf of all the manufacturers with the union, a copy of which contract is annexed to the complaint; that by reason of the refusal to sell soda to plaintiffs unless they become members of the union, plaintiffs will be unable to carry on their business and thus suffer irreparable injury, loss and damages.

Upon the foregoing facts the plaintiffs demand that: " * * * a temporary injunction * * * be issued restraining and enjoining all of the said defendants, their agents, servants or employees and members from combining and conspiring together to injure or destroy the plaintiffs' soda business and from interfering with the plaintiffs' businesses and from continuing the said combination and conspiracy and from notifying said plaintiffs that they will be unable to buy any soft drink beverages unless and until they become members of the defendant Soft Drink Workers Union, Local No. 812, New

York City, of the International Brotherhood of Teamsters, affiliated with the American Federation of Labor, and from prohibiting the plaintiffs from picking up soft drink beverages from the defendant Kirsch Beverages Inc. and Geo. Schneider & Co., and from refusing to deal with or sell soft drink beverages to the plaintiffs because of the fact that they, the plaintiffs, are not members of the defendant Soft Drink Workers Union, Local No. 812, New York City, of the International Brotherhood of Teamsters, affiliated with the American Federation of Labor, and from demanding any amounts for initiation or dues as a condition precedent to the doing business with the defendant Kirsch Beverages Inc. and Geo. Schneider & Co., and from using any and all ways, means and methods either directly or indirectly, of doing any of the aforesaid acts, or through the order or directions or suggestions to committees, associations, officers or agents and from continuing the said combination and conspiracy or any part thereof * * *.''

The contract entered into between the manufacturers and the union generally provides for rates of wages, hours of employment, working conditions, group insurance, vacations, arbitration of disputes, etc., and the union predicates its right to instruct the manufacturers to refuse to sell to the plaintiffs and others similarly situated upon article 34 of the agreement, which reads as follows: '' Article 34. The following shall not be construed as a breach of this contract:

'' a. The refusal of the Union to permit the employees to perform work when the Firm has been or is engaged in supplying merchandise or materials for a Company affected by a strike or labor dispute;

'' b. The refusal of the Union to permit the employees to perform work on merchandise destined for a Company affected by a strike or labor dispute.''

The manufacturers and their association, by their answering affidavits, deny the conspiracy charged and deny that any of them refused to sell soda to any of the plaintiffs. Their position is explained as follows: That a few weeks ago the defendant union notified the defendant association that the union believed its efforts to unionize seltzer peddlers (a characterization applied to plaintiffs) who were opposed to unionization, constituted a '' labor dispute '' within the meaning of the above-quoted article 34, and that if any association member would attempt to sell or deliver merchandise to any of the plaintiffs, the union would refuse to permit its members (who constitute the employees of the association's members) to perform work at the plant of any such manufacturer.

The association further explains that its members are physically unable to sell or deliver any soda to plaintiffs by reason of the defendant union's interpretation and application of article 34 of the collective agreement and if the union would change its interpretation the association members would sell and deliver to the plaintiffs in the same manner as they did prior to the union's refusal to load plaintiffs' trucks.

The answering affidavit of Joseph [Jacob] Engar, president of the defendant union, sets forth the position of the union substantially as follows: Assuming that the plaintiffs are independent contractors who are self-employed and engage no help (a status which is factually denied and asserted to be incredible), it is urged that physical labor in which the plaintiffs are engaged is in direct and substantial competition to the labor performed by defendant union's members. Union drivers and helpers are employed under contracts calling for an eight-hour day, a forty-hour week, overtime rates for hours in excess of eight per day, paid vacations and holidays, together with social security, unemployment insurance and workmen's compensation benefits, thus making the cost of the union labor a substantial one to the manufacturers and distributors. It is argued that the plaintiffs, not having to meet any of these costs, yet performing the same physical work of delivering soda, enjoy a competitive advantage, the effect of which is to destroy the standards of wages and working conditions achieved by collective bargaining. The union insists that it has the constitutional right to refuse to load plaintiffs' trucks and that such refusal is particularly permissible by reason of article 34 of the collective agreement with the defendant manufacturers hereinabove quoted.

I am not in accord with the position taken by the union. It seems to me that the sole problem presented herein is whether or not there is a " labor dispute " within the meaning of section 876-a of the Civil Practice Act. If a " labor dispute " exists, then the motion to dismiss the complaint must be granted for lack of jurisdiction of this court, by reason of the failure of plaintiffs to comply with the Civil Practice Act (§ 876-a). Such dismissal, of course, would preclude the issuance of an injunction order *pendente lite.*

The Legislature has said: " The term ' labor dispute ' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning

employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee.'' (Civ. Prac. Act, § 876-a, subd. 10, par. [c].)

Thus it is clear that the first essential for a '' labor dispute '' is employment. The courts have consistently held that there is no labor dispute within the statute where an individual proprietor does his own work without the help of others (*Angelos* v. *Mesevich,* 289 N. Y. 498, 501, revd. on other grounds *sub nom. Cafeteria Union* v. *Angelos,* 320 U. S. 293, and on reargument revd. 292 N. Y. 681; *Baillis* v. *Fuchs,* 283 N. Y. 133, 137; *Thompson* v. *Boekhout,* 273 N. Y. 390; *Wohl* v. *Bakery Drivers Union,* 259 App. Div. 868, affd. 284 N. Y. 788, revd. on other grounds *sub nom. Bakery Drivers Union* v. *Wohl,* 313 U. S. 548; *Lyons* v. *Meyerson,* 18 N. Y. S. 2d 363, affd. 260 App. Div. 863; *Feinberg* v. *Pappas,* 30 N. Y. S. 2d 5; *Gips* v. *Osman,* 170 Misc. 53, affd. 258 App. Div. 789).

In *Lyons* v. *Meyerson* (*supra*) the court enjoined the defendant union and its members from in any way picketing the plaintiffs' premises or place of business or having any person or organization directly or indirectly interfere with the conduct of the plaintiffs' business, where the two plaintiffs determined to carry on their seafood business without the assistance of anyone else. It was said (pp. 364–365): '' There is no labor dispute herein involved. The Court of Appeals has clearly defined in *Thompson* v. *Boekhout,* 273 N. Y. 390, 7 N. E. 2d 674, the meaning of a labor dispute. The judicial interpretation of the legislative definition of a labor dispute therein expressed * * * unequivocally establishes that a labor dispute presupposes the relationship of employer and employee.

'' When an owner of a business or the members of a partnership does or do all the work himself or themselves and no outside help is utilized, the relationship of employer and employee does not exist; and in consequence there cannot be, as stated in the statute, Civil Practice Act, § 876-a, subd. 10(c), any ' controversy concerning terms or conditions of employment ', or ' concerning employment relations ', or ' arising out of respective interests of employer and employee '. * * * it is still the prerogative of an individual to engage in business at will, to decide the extent and nature of his occupation without interference by or because of the direction or command of any one, including Government itself. Surely, if in times other than war the Government cannot compel a man to enlarge his business, or

to employ others in the conduct thereof, a labor union cannot. If in his own business a man desires to labor long hours and exhaust himself, no one can complain, and the labor union may not paternalistically compel him, even if it is for his own good and advantage to change his course by employing others. No man, save in certain businesses with which we are not concerned, is compelled to submit to restrictions and limitations before engaging in business as imposed either by labor unions or employers' organizations. The freedom to select whether his business shall be an open or closed shop, or whether it shall in no wise involve any question of labor, has in no wise been restricted by the laws of this state, and particularly by section 876-a, Civil Practice Act.

" Therefore, when these two plaintiffs determined to carry on this business without the assistance of any one else, no one, not even the defendant union, had a legal right to complain. The fact that by doing all the work themselves these plaintiffs were and are enabled to have a commercial advantage over their competitors who do employ outside help in furtherance of their business cannot affect the decision of law herein involved."

In *Gips* v. *Osman* (170 Misc. 53, *supra*) where the plaintiff, proprietor of a small hosiery jobbing business, refused to accede to a demand by the union that he pay his employee the union scale of wages, and decided to run his business without assistance at about the same time that the union called a strike and supplied a few pickets to assist the erstwhile employee in picketing the premises. Granting the motion to enjoin the picketing, the court said (pp. 53–54) : " There seems to be some confusion in the minds of the parties as to when a labor dispute exists in regard to a single employee. The rule is quite clear. The number of employees involved is of no significance. A labor dispute may exist regardless of whether the employer hires one worker or a great many. *But there must be an employer*. There can be no such dispute with a person who hires no one. (*Thompson* v. *Boekhout*, 273 N. Y. 390.) In the case of a single employee where employer-employee relations are interrupted by differences, a labor dispute exists if the position continues, e.g., where another is hired or there is an intention to fill the place at a later time, perhaps when the dispute terminates. If there is the opposite intention, namely, to conduct activities without employees then there is no employer and no labor dispute. Which situation exists depends on the facts of the particular case." (Italics supplied.)

In *Feinberg* v. *Pappas* (30 N. Y. S. 2d 5, *supra*) the court held that no labor dispute was involved, and granted a motion to enjoin the defendants from interfering with the plaintiffs' purchase of eggs, where the plaintiffs were seeking to purchase them from the defendant dealers, who refused to sell because of an agreement with the defendant unions that deliveries should be made only by union members, and the plaintiffs did their own carting in their own vehicles, did not hire nonunion trucks or help, and did their own work.

In my opinion the authorities relied upon by the defendants are not controlling. The reversals by the United States Supreme Court in the *Angelos* and *Wohl* cases (*supra*) predicated on the failure of the Court of Appeals of this State to give due weight to the constitutional right of free speech, involved the right to lawfully picket. Such reversals, however, did not, in my opinion, alter the settled rule of this State that no " labor dispute " exists within the meaning of section 876-a of the Civil Practice Act where businesses are self-owned and self-operated. There is no attempt here to enjoin lawful picketing, but an appeal to this court by the individual owners of legitimate enterprises to restrain the defendants from so conducting themselves as to cause irreparable injury to the plaintiffs.

There is no labor dispute involved either within the terms of the Civil Practice Act or of article 34 of the collective agreement referred to. Consequently, under all the circumstances of this case, the motion to dismiss the complaint is denied and the injunction *pendente lite* granted.