LOCAL UNION NO. 324, INTERNATION-
AL BROTHERHOOD OF ELECTRICAL
WORKERS, A.F.L. et al. v. UPSHUR-
RURAL ELECTRIC COOPERATIVE
CORP. et al.

No. 6631.

Court of Civil Appeals of Texas.
Texarkana.

Sept. 10, 1953.

Mullinax & Wells, L. N. D. Wells, Dal-
las, for appellants.

Fulton, Hancock & McClain, Edwin M.
Fulton and Hollie L. McClain, Gilmer,
Powell, Wirtz & Rauhut, John B. Connally
and William A. Brown, Austin, for appel-
lees.

LINCOLN, Justice.

This appeal is by Riley Irvin and Hugh Campbell from an order refusing their petition for a temporary mandatory injunction against the appellees, Upshur-Rural Electric Cooperative, a corporation hereafter referred to as the Cooperative, and J. L. Johns, its manager. The petition, commendably clear and concise, alleged that appellants, employees of the Cooperative, were members of Local No. 324, International Brotherhood of Electrical Workers, A. F. L., a "Labor Union", hereafter referred to as the Union, within the meaning of the Act of the 50th Legislature, 1947, Ch. 74, Sec. 4, p. 107, Vernon's Ann.Civ. St. art. 5207a; that appellants were discharged and denied employment by the appellees because of their membership in said Union, contrary to the provisions of said Act, and particularly of Sec. 2 thereof; that they have suffered, and will continue to suffer irreparable damages for which they have no adequate legal remedy. The prayer was for a mandatory injunction requiring appellees to reinstate them to their positions of employment during the pendency of the main suit. After a full hearing the district court denied the injunction prayed for.

The applicable portions of the Act referred to, Acts 50th Leg., Ch. 74, p. 107, Vernon's Ann.Civ.St. art. 5207a, read:

"Section 1. The inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be denied or infringed by law, or by any organization of whatever nature.

"Sec. 2. No person shall be denied employment on account of membership or nonmembership in a labor union.

"Sec. 3. Any contract which requires or prescribes that employees or applicants for employment in order to work for an employer shall or shall not be or remain members of a labor union, shall be null and void and against public policy. * * *"

It is not necessary to set out Section 4 of the Act, which defines a "labor union", as we hold, and the fact is not controverted, that the Union here involved is a "labor union" within the meaning of the Act.

■ The Supreme Court has upheld the constitutionality of this Act. Construction and General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W. 2d 958. The effect of it is to make the "closed shop" in Texas illegal and against public policy. Texas State Federation of Labor v. Brown & Root, Tex.Civ.App., 246 S.W.2d 938, writ refused, n. r. e.; Sheet Metal Workers Local No. 175 v. Walker, Tex.Civ.App., 236 S.W.2d 683, writ refused.

■ Since neither penalties nor remedial procedure is provided in the Act, the injunctive power of the courts may protect against invasion of such rights as are granted thereby. Brotherhood of Ry. and S. S. Clerks, etc., v. Texas & N. O. R. Co., D.C., 24 F.2d 426; Id., 5 Cir, 25 F.2d 873, 876, affirmed sub nom. Texas & N. O. R. Co. v. Brotherhood of Ry. and S. S. Clerks, 5 Cir., 33 F.2d 13, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. The right, of course, is abstract, and the applicant must show himself entitled to equitable relief by bringing himself within the statutory requirements, art. 4642 et seq., R.S. of Texas, as they have been construed by the courts.

■ The burden of proof, as in all such cases, is upon the applicant to show himself entitled to the relief prayed for, 24 Tex.Jur., p. 180, Sec. 134; and the appellate court will indulge the usual presumptions in favor of the judgment appealed from. 24 Tex.Jur., p. 310, Sec. 251.

We will first dispose of the appeal of Riley Irvin. This appellant had been in the employ of the Cooperative for about eleven years, in construction and maintenance of electric transmission lines and in the general electric work of the Cooperative. He had been advanced from lineman to foreman of a crew, and about July 1, 1950, he was promoted to the position of construction superintendent or supervisor.

As such he was in charge of and responsible for all construction and maintenance. All crews and their foremen were under his direction and control. Next to the manager, and later to the assistant manager, he was the highest ranking employee of the Cooperative.

About June 3, 1950, appellee J. L. Johns became manager of the Cooperative. Previous to his selection he had been construction superintendent, and after becoming manager he promoted Irvin to the position. Johns knew at that time that Irvin was a member of the Union, Irvin having had such membership for about ten years. Irvin was discharged on July 24, 1951. Appellants say he was discharged for "union membership", contrary to the Act referred to. The case was tried to the court. No finding nor conclusions were filed, nor does the judgment as to Irvin and Campbell state the grounds of the decision. However the trial court filed, and there is brought up in the transcript, a "Memorandum of Court's Decision," filed on the date of the judgment entry. This instrument states: "This memorandum is not to be taken as findings of fact or conclusions of law as contemplated by the Rules of Civil Procedure, and is intended only that interested persons may understand the reasoning of the court in reaching the judgment entered herein."

In discussing the evidence the Court's Memorandum says: "The evidence shows that Riley Irvin, as a superior of Wiley Cook on an occasion during working hours of both individuals and on their employer's premises, inquired whether or not Cook had joined a union at a time when he knew that Cook was being pressed to become a member. Such inquiry was more than a casual effort to acquire information because Irvin was present when another supervisory employee presented Cook with an instrument for Cook's signature designating the plaintiff union as Cook's bargaining representative. Such inquiry, in fact, threw the weight of Riley Irvin's superior position in the balance on the side of the union. Such evidence, joined with the uncontradicted testimony that at a time anterior to the conditions giving rise to the present suit Irvin worked with the union business manager in securing evidence for union use in its controversy with the Cooperative and attended union meetings at which union policy matters were discussed, leaves little doubt but what Irvin was soliciting members for his union on company time and on company premises and using the weight of his superior position to encourage employee applications for union membership. Such conduct is not protected by the quoted section (Sec. 2) from Article 5207a. The fact that the employer cooperative tried by various means to discourage union membership in its employees does not perponderate against this conclusion."

Without regard to the Memorandum, the trial court's judgment involves findings above enumerated. We have carefully reviewed the facts and find they support such inferences. On the points mentioned by the trial court's Memorandum, the facts are not in material dispute. The trial court concluded that such facts constituted "union activities" of such nature and to such extent as to be beyond the purview of protection offered by the Act for union membership. We concur in the conclusion.

Our position on one point stated in the Court's Memorandum needs to be made clear. We refer to the statement that "Irvin worked with the union business manager (A. R. Johnson) in securing evidence for union use in its controversy with the Cooperative." The evidence discloses that in 1950, before the first petition was filed with the National Labor Relations Board, and to aid the Union in that petition, Irvin accompanied Johnson, in the Cooperative's vehicle, and during working hours, to point out the names, places, and kinds of business of some twenty or thirty members of the Cooperative who were engaged in interstate business. However, Johns did not know such facts until the N. L. R. B. hearing was had a few days before the hearing on this case. Such facts, therefore, could not have been in his mind when he discharged Irvin.

The validity of such testimony in this case should be tested by one or two

general rules. In the first place, the common law rule that an employer may discharge an employee for any reason he desires, or for no reason, has been modified to the extent of the one exception only that he cannot discharge for union membership. Involved in the court's judgment is a conclusion that Irvin was not discharged for such membership; or, perhaps more accurately, that Irvin had not sustained the burden of proof that he was discharged for such reason. We think such conclusion finds support in the evidence. We are not restricted to the specific reasons set forth in the Memorandum, if additional grounds for the judgment find support in the evidence.

 In the next place, the right to equitable relief must be determined as such right may or may not exist at the time of the hearing. An injunction will not issue to protect a right not in esse. 43 C.J.S., Injunctions, § 19a, page 429. Regardless of what conditions may have existed in the past, the applicant must show a present necessity for the relief. "It has been said that equity acts in the present tense, and that relief is dependent on present and future conditions rather that solely on those existing when the suit was brought." 43 C.J.S., Injunctions, § 29b, page 460. Wrongful conduct is appraised as of the time of the requested relief. 30 C.J.S., Equity, § 98, page 489. The applicant must "come into the court with clean hands." The fact that Irvin, a year before, had assisted the business manager in working up a case against the employer places the employer in the anomalous position of fighting against himself through the agency of an alter-ego. The admission of these facts by Irvin was sufficient ground for denying him the relief sought. Missouri Pacific Transp. Co. v. Union Bus Lines, Tex.Civ.App., 210 S.W.2d 846, error refused, NRE.

Appellant Irvin's point under consideration is that the trial court erred in failing to find that he was discharged on account of his union membership. Actually, that is an issue to be determined on the trial of the case on its merits. In the present proceeding the issue is whether appellant is entitled to the relief prayed for. The judgment is that he is not presently entitled to such relief. That judgment involves findings on all facts in evidence which support it. It also involves a finding that appellant has not shown himself entitled to injunctive relief by a preponderance of proof. We think the record supports the judgment and appellant's point above stated is overruled. This effectively disposes of Irvin's appeal, and additional points urged by him are overruled.

We are not to be understood as holding that a member of a labor union may be discharged for union activity per se. Membership in a union, safeguarded by the law, carries with it at least, the inherent rights named in Section 1 of the Act. Such rights and the benefits of membership necessarily imply the right of some activity. As stated by the learned district judge in the "Memorandum" referred to, "It would be a barren and too restrictive meaning to say that membership is limited to the bare right of a person to have his name on the rolls of a union." The limits of such activity must be determined by the facts of the particular case. Our holding here is that appellant Irvin did not show himself entitled to the relief prayed for; and that insofar as the trial court's judgment involves a finding that Irvin was discharged for "union activities" not inherent in his union membership, such judgment finds support in the evidence.

Appellant Campbell's contention is that he was discharged August 24, 1951, because of his union membership. Campbell had been employed by the Cooperative since 1945. He had been a member of the union for ten years. Johns had known of Campbell's membership in the Union since 1946. Campbell had been promoted by Johns from lineman to crew foreman. The trial court's Memorandum already referred to states: "Undisputed facts are that Campbell on several occasions and shortly preceding his discharge violated fundamental employer rules by the commission of acts which

488

would warrant dismissal, whether formal written rules respecting conduct of employees had been promulgated or not."

The conduct referred to in the foregoing statement was Campbell's use of intoxicating beverages. These facts relating to alcoholic beverages appear by Campbell's admissions: He was drinking while on the job prior to July, 1950; he had been drinking before and drank during a trip to Oklahoma in 1948; he had carried cold beer in the Cooperative's truck; he had given beer to men under his supervision during working hours; on one occasion he had taken the Cooperative's truck to Longview and bought whiskey; he was drinking when he went to one Richardson's house to re-locate a meter; he was drinking when he went to re-set a meter at the house of one Woodruff on or about July 26, 1951. The record does not show whether each and all of the foregoing instances were or were not known to Johns when he discharged Campbell.

Johns categorically denied that Campbell was discharged because of his union membership. Upon his discharge he promoted Joe Yokum to Campbell's position, and Yokum was a known member of the Union. Under all the foregoing facts we think it was within the discretion of the court as trier of the facts to find and conclude that the appellant had not discharged the burden of proof to show himself entitled to the relief sought; and that insofar as such relief rested upon the claim that he was discharged for union membership, there is ample evidence to support the finding that Campbell's discharge was not for that reason, but rather for other and different reasons. As already pointed out, the so-called "Right-to-Work" Statute does not prohibit discharge of an employee for any reason or for no reason at all, except for his union membership. Appellant Campbell's points are overruled.

The judgment of the district court is affirmed.