Gene QUINN, Harold Case, Willard L. Anderson, Harold Hickman, Charles Wilson, Clyde Wood, Frederick Otto, Kenneth Sparks, W. E. Goodwin, and Dorsey D. Wood, for themselves and as representatives of a class consisting of all of the members of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 833, A. F. of L., a voluntary unincorporated labor organization, (Plaintiffs) Appellants,

v.

O. J. BUCHANAN, an Individual d/b/a Columbia Packing Company, (Defendant) Respondent.

No. 45014.

Supreme Court of Missouri, En Banc.

Jan. 14, 1957.

Motion for Rehearing or to Modify Opinion Denied Feb. 11, 1957.

Harry H. Craig, Norman W. Armbruster, St. Louis, for appellants. Wiley, Craig, Armbruster, Schmidt & Wilburn, St. Louis, of counsel.

Edwin C. Orr, Carl F. Sapp, Columbia, for respondent.

HYDE, Judge.

Plaintiffs' petition for both preventive and mandatory injunctive relief and actual

and punitive damages, in excess of $30,-000.00, based on violation of Sec. 29, Article I, 1945 Constitution, V.A.M.S., was dismissed for the reason (stated in the motion to dismiss) that it did not state a claim upon which relief could be granted because the constitutional provision is not self-executing. Plaintiffs appealed from this judgment of dismissal. The case was transferred to the Court en Banc by Division No. 2 where it was first heard.

The facts alleged in the petition and the relief sought are set out on pages 2 and 3 of the opinion adopted in Division No. 2 as follows: The defendant is Mr. O. J. Buchanan who is engaged in the business of processing and selling meat and meat products at wholesale under the trade name of Columbia Packing Company. His business is carried on and conducted from Columbia, Missouri, and he is not engaged in interstate commerce. He employed five driver-salesmen, Kenneth Sparks, W. E. Goodwin, Dorsey D. Wood, Earl Allen and L. R. Wrinkle. Three of these driver-salesmen, Sparks, Goodwin and Wood, are parties plaintiff in this action, and it should be noted that Wrinkle and Allen are not parties. The other plaintiffs, Quinn, Case, Anderson, Hickman, Wilson, Otto and Clyde Wood, are the officers and trustees and the class representatives of the members of Local Union No. 833 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. It is alleged that November 13, 1954, the five driver-salesmen organized, designated and chose Local No. 833 as their collective bargaining representative to represent them in negotiating with their employer, Mr. Buchanan, for a collective bargaining agreement as to wages, hours and other terms and conditions of employment. It is charged that on November 18, 1954, Mr. Buchanan's sales manager told Sparks and Goodwin that he had heard they had signed cards authorizing Local 833 to act as their collective bargaining representative and he advised them, "that anyone who had signed such an authorization would be discharged, and * * * that there would be no union allowed in

defendant's place of business." It is alleged, when one of the plaintiffs' bargaining representatives called upon Mr. Buchanan on November 22, 1954, that he refused to meet with the representative and has since refused to recognize Local 833 as the bargaining representative of his driver-salesmen and has refused to negotiate with the union upon any subject. It is then alleged that his refusal to recognize and bargain with the union is "in violation of rights guaranteed to said employees and to said Local 833 under Article I, Section 29 of the Constitution of Missouri, 1945, and is therefore unlawful." It is alleged, because Goodwin, Wood and Sparks designated Local 833 as their collective bargaining representative that Mr. Buchanan, in violation of the constitutional provision, discharged them, and that he "coerced and induced L. R. Wrinkle to cancel and withdraw his authorization of Local 833 to act as his collective bargaining representative." It is charged that Mr. Buchanan's alleged unlawful acts and conduct were wilful and malicious and in reckless disregard of plaintiffs' constitutional rights.

Aside from the conventional prayer for general equitable relief, the petition requests four separate and distinct types of relief: (1) "preventative relief,"—perpetually enjoin and restrain the defendant from (A) inducing, encouraging, or coercing employees into withdrawing their authorization of Local 833 as their collective bargaining representative, (B) interfering with the employees' right to freely choose the union as their representative, and (C) refusing to recognize and collectively bargain with Local 833; (2) "mandatory relief,"—order the defendant to reinstate Goodwin, Sparks and Wood and "to award them such pay and allowances as they would have earned had they not been unlawfully discharged," (3) "Awarding such actual damages as Local 833 has sustained in loss of dues, initiation fees, loss of prestige in the community, and loss of bargaining power by reason of defendant's unlawful acts and conducts," not to exceed $5000; and (4) "Awarding damages in the amount of Twenty-Five Thousand

Dollars ($25,000.00) to plaintiffs as punitive damages."

Sec. 29, Art. I provides: "That employees shall have the right to organize and to bargain collectively through representatives of their own choosing." This is a provision of the Bill of Rights by which the people assert their rights, acknowledge their duties and proclaim the principles upon which their government is founded. (See preamble to Art. I.) Provisions of a Bill of Rights are primarily limitations on government, declaring rights that exist without any governmental grant, that may not be taken away by government and that government has the duty to protect. 1 Cooley's Constitutional Limitations 93, 358; Am.Jur. 1092, Sec. 308; 16 C.J.S., Constitutional Law, § 199, p. 976. As these authorities show, any governmental action in violation of these declared rights is void so that provisions of the Bill of Rights are self-executing to this extent. See also 1 Cooley's Constitutional Limitations 166 note. They do not, however, usually provide methods or remedies for their enforcement and certainly it is proper and within the legislative power to enact laws to protect and enforce the provisions of the Bill of Rights. 11 Am.Jur. 1094, Sec. 309. In the absence of legislation, individuals may enforce and protect these rights from infringement by other individuals by any appropriate common law or code remedy. Householder v. Kansas City, 83 Mo. 488, 495, and cases cited; see also Local Union No. 324, International Brotherhood of Electrical Workers v. Upshur-Rural Electric Cooperative Corp., Tex.Civ.App., 261 S.W.2d 484; Texas & N. O. R. Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. Sec. 14, Art. I, 1945 Constitution, provides: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character." This means "that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy." 11 Am.Jur. 1124, Sec. 326. Certainly violation of one's fundamental rights by another would usually be such a wrong.

We pointed out in City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, that the right of citizens to organize to present their views collectively was based on the fundamental rights of petition, peaceable assembly and free speech. We further stated, 206 S.W.2d loc. cit. 543: "the principal purpose of Section 29 was to declare that such rights of collective bargaining were established in this state. It means that employees have the right to organize and function for a special purpose: namely, for the purpose of collective bargaining." However, this right of employees is specifically stated to be "through representatives of their own choosing." This certainly means that employees have complete freedom of choice to organize and choose their collective bargaining representatives. Coercion from any source is a denial of this right and a direct infringement on it, which is a wrong against the employees; and surely this right may be protected by any proper remedy.

This is the basis of our decisions in Bellerive Country Club v. McVey, Mo.Sup., 284 S.W.2d 492; Tallman Co. v. Latal, Mo.Sup., 284 S.W.2d 547. In each of these cases picketing of an employer was enjoined because the picketing was for an unlawful purpose, namely: to force the employer to coerce his employees to select the picketing union as their representatives for collective bargaining. Since such coercion would violate the rights of his employees to make their own choice, declared in our constitution, the employer was entitled to the remedy of an injunction against those attempting to force him to do so.

In this case, the facts alleged are that certain employees of defendant employed by their own choice have selected the union involved as their representative for collective bargaining and that the employer is attempting to coerce them to rescind this choice. Therefore, it seems

reasonable to say that the employer's action should be declared improper because in violation of his employees' rights and that he should be enjoined from exercising this direct coercion. An important question in this case is whether or not the union, selected by these employees as their collective bargaining organization, may maintain a suit for this purpose. Of course, a union (which is a voluntary association) is not an entity that can sue and be sued as such in the absence of statutory authorization. Ruggles v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, 331 Mo. 20, 52 S.W.2d 860; A Survey of Missouri Labor Law—Labor Unions as Suable Entities—Shute, 18 Mo. Law Rev. 96. However, this action is brought as a class action, the plaintiffs being three employees who were resisting coercion, as members of the union they had selected as their collective bargaining agent, and the officers and trustees of the union. Thus the class was composed of the members of the collective bargaining organization (all the persons in it who had organized for the purpose of collective bargaining); and it seems reasonable to hold that all of them had a joint or common interest in maintaining their right to organize and to bargain collectively through their voluntary organization in this particular instance as well as in others. Such a class action is the proper method for maintaining a suit in behalf of numerous members of a voluntary association. See Section 507.070, subd. 1(1), RSMo 1949, V.A. M.S.; 1 Carr Missouri Civil Procedure 169, 175, 187–188, Sec. 68; 4 Am.Jur. 487, Secs. 48–49; 31 Am.Jur. 985, Sec. 309; 7 C.J.S., Associations, § 35, p. 86; State ex rel. Allai v. Thatch, 361 Mo. 190, 234 S.W.2d 1. We, therefore, hold plaintiffs have the right to maintain this suit as such as proper representatives of this class for the purposes hereinabove stated.

 However, any cause of action these individual employees herein personally may have against defendant is not involved in this class action. Thus a cause of action for damages sustained by them personally would belong to them individually and could only be determined in an action brought by them for that purpose. See wrongful discharge cases, Craig v. Thompson, Mo.Sup., 244 S.W.2d 37 and cases cited; State ex rel. St. Joseph Belt R. Co. v. Shain, 346 Mo. 1098, 145 S.W.2d 131 quashing certiorari in McGee v. St. Joseph Belt Ry., 235 Mo.App. 707, 133 S. W.2d 675. There is nothing alleged in the petition to show that defendant's employees involved had any contract of employment for a definite term; and "the rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such case, no action can be maintained for wrongful discharge." Christy v. Petrus, Mo.Sup.Banc, 295 S.W.2d 122, 124, and cases cited. Nevertheless, there can be coercion by threats of discharge and by other means such as changes in compensation, hours of work and other working conditions; and, as we indicated in State ex inf. Connett v. Madget, Mo.Sup. Banc, 297 S.W.2d 416, discharge of employees, under such circumstances as alleged, would be "evidentiary of the oppressive and coercive methods used."

 It should also be pointed out that Sec. 29, Art. I is not a labor relations act, specifying rights, duties, practices and obligations of employers and labor organizations, as plaintiffs seem to claim. See cases under similar New York constitutional provision: Erie County Water Authority v. Kramer, 208 Misc. 292, 143 N.Y. S.2d 379; Quill v. Eisenhower, Sup., 113 N.Y.S.2d 887, 889; Trustees of Columbia University v. Herzog, 269 App.Div. 24, 53 N.Y.S.2d 617, affirmed 295 N.Y. 605, 64 N.E.2d 351, and Domanick v. Triboro Coach Corp., Sup., 18 N.Y.S.2d 650. This provision is a declaration of a fundamental right of individuals. It is self-executing to the extent that all provisions of the Bill of Rights are self-executing, namely: Any governmental action in violation of

the declared right is void. As between individuals, because it declares a right the violation of which surely is a legal wrong, there is available every appropriate remedy to redress or prevent violation of this right. However, the constitutional provision provides for no required affirmative duties concerning this right and these remedies can only apply to their violation. As stated in the Quill case, 113 N.Y.S.2d loc. cit. 889: "It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own choosing does not cast upon all employers a correlative obligation. The constitutional provision was shaped as a shield; the union seeks to use it as a sword. * * * The constitutional provision was intended to protect employees against legislation or acts which would prevent or interfere with their organization and choice of representatives for the purpose of bargaining collectively." Thus implementation of the right to require any affirmative duties of an employer concerning it is a matter for the Legislature.

█ Therefore, on the facts stated, we hold plaintiffs in this class action are entitled to preventive relief enjoining defendant from coercing his employees into withdrawing from the union and rescinding their authorization to it to act as their collective bargaining representative and also from otherwise interfering by coercion with these employees' rights to freely choose the union as their collective bargaining representative. (The words "inducing" or "encouraging" used in plaintiffs' prayer for relief are too broad and might prohibit lawful persuasion that either the employer or the union could properly use.) However, plaintiffs are not entitled to the mandatory relief sought or to require defendant to recognize and bargain with the union. The relief to which they are entitled is to have the rights of those employees, who voluntarily choose to organize with them for the purpose of collective bargaining, protected from coercion. Employers in the Bellerive and Tallman cases got no more than that; actually, what they got only was protection from being coerced to violate their employees' right against coercion. Coercion against employees either to prevent or compel them to organize or not to organize is a violation of their fundamental right of free choice in this matter and is equally wrong. Because of its constitutional basis, it is a wrong that should be recognized by the law of the land as one for which the courts will afford a remedy.

The judgment is reversed and remanded.

All concur.

On Motion for Rehearing or to Modify

PER CURIAM.

Plaintiffs say that in considering the rights of the discharged employees we have overlooked the provision of Section 507.040 RSMo 1949, V.A.M.S., permitting joinder of plaintiffs if they assert any right to relief jointly or severally "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action." However, in the petition herein, there is no claim made for damages for wrongful discharge by the individual employees and plaintiffs now say in their motion for rehearing "that these individual employees had no contract of employment for a definite term." Thus it does not appear that such an action was intended, or what action, if any, could be maintained by these employees, so it is not necessary to decide whether they have individual claims which would be determined in this class action; and we make no ruling on it. Actually the relief asked in plaintiffs' petition concerning these employees is not for damages for wrongful discharge but for reinstatement and for pay they might have earned and is part of the mandatory injunctive relief sought. As authority for such relief plaintiffs cite Texas & N. O. R.

420

Co., v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. However, in that case the employees involved were discharged after an injunction had been issued against the employer and they were required to be reinstated in a contempt proceeding against the employer. In the Texas cases cited, Local Union No. 324, International Brotherhood of Electrical Workers, A.F.L. v. Upshur-Rural Electric Cooperative Corp., Tex.Civ. App., 261 S.W.2d 484 and Lunsford v. City of Bryan, Tex., 297 S.W.2d 115, the decisions were based on a Texas statute, Vernon's Ann.Civ.St. art. § 5207a, which provided: "No person shall be denied employment on account of membership or non-membership in a labor union." Of course, if we had such a statute we would have a different case.

■ Plaintiffs' further argument concerning the right to compel an employer to bargain overlooks the fact that Sec. 29, Art. I of our Constitution, V.A.M.S., does not purport to *require* collective bargaining by either employees or employers. The right it gives to employees is the right to organize for the purpose of collective bargaining through representatives of their own choosing. City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, 543. Whether or not employers and organized employees can bargain or reach an agreement depends upon the willingness of both just as in the case of bargaining for any kind of contract between other persons who have the right to make contracts. Perhaps modern industrial conditions make desirable more than that for best labor relations but that is a matter for the Legislature. As to plaintiffs' right to recover the damages claimed in this class action, they cite no authority and have not properly briefed this question for determination at this time. Therefore, this is a matter to be decided upon such proof as may be adduced; we make no ruling on it now.

The motion for rehearing or to modify opinion is overruled.

All concur.