No. 18,587.

SARA E. TAYLOR *v.* RICHARD K. WELLE, ET AL.

(352 P. [2d] 106)

Decided May 9, 1960.    Rehearing denied May 31, 1960.

Messrs. Lee, Bryans, Kelly & Stanfield, Mr. Robert F. Thompson, Mr. Fred L. Witsell, Jr., for plaintiff in error.

Messrs. Wormwood, O'Dell & Wolvington, for defendant in error Richard K. Welle.

Mr. Lowell White, Mr. Walter A. Steele, for defendant in error Galen D. Hutcherson.

Messrs. Yegge, Bates, Hall & Shulenburg, for defendant in error Edward C. Reish.

*En Banc.*

Mr. Chief Justice Sutton delivered the opinion of the Court.

On October 1, 1955, Charles W. Taylor was fatally injured in an automobile accident. His widow, Sara E. Taylor, subsequently filed the instant action against the drivers of the three automobiles involved in the accident to recover damages incurred as a result of his allegedly wrongful death. At the conclusion of plaintiff's case, the trial court granted motions to dismiss the complaint against all three defendants and directed a verdict in their favor. The primary issue here presented is whether the dismissals constituted error.

The accident occurred near Monument, Colorado, on U. S. Highway 85-87, about one-tenth of a mile north of where it intersects with Colorado Highway 50. It was approximately 7:00 P.M. and was quite dark.

Defendant Hutcherson was driving the first car. Immediately behind him in the same lane of traffic was defendant Reish's car, followed by defendant Welle's

car, in which the decedent was riding as a guest. These three vehicles were in a heavy stream of traffic southbound towards Colorado Springs. All the automobiles involved were traveling at approximately forty-five miles per hour, a speed fifteen miles per hour under the then posted speed limit of sixty. It is not disputed that Taylor was a guest within the meaning of the Colorado Guest Statute, C.R.S. '53, 13-9-1.

Some time before the accident occurred a fourth vehicle, driven by one Michael B. Mahoney, had, for some unknown reason, left the highway at the aforementioned intersection, went into the borrow pit on the west side of the highway and crashed into a culvert. An officer of the Colorado Courtesy Patrol had placed a bright red flare on a guard post at the scene of that accident to warn approaching traffic of the Mahoney accident. Neither the latter vehicle nor the flare were on the paved portion of the highway. It appears that the flare was visible from the curve at the top of Monument Hill to one who would be looking that far ahead and towards the south. This was approximately a mile away from the Mahoney car.

As the cars in question approached the intersection the traffic in front of the Hutcherson vehicle came to a sudden stop. Hutcherson applied his brakes and also came to a stop suddenly but without skidding. After he had come to a complete halt the Reish vehicle collided with the rear end of Hutcherson's car.

Reish was not available to testify at the trial. Testimony of eye witnesses indicates that immediately upon seeing the Hutcherson vehicle stopping in front of him Reish jammed on his brakes. There were 49 feet of skid marks between the point where he applied his brakes and the point of impact. The evidence is not clear whether he had managed to come to a complete stop before his car hit Hutcherson's. However, either as he stopped before striking the Hutcherson vehicle, or at least when almost stopped, he was struck from the rear by the

Welle car. In any event the impact of Welle's car pushed Reish's vehicle violently forward, causing it to collide with great force with the rear of the Hutcherson car in front of it.

The Welle vehicle laid down 83 feet of skid marks up to the point of impact. While skidding it had turned sideways so that at the point of collision its right rear fender struck the rear of the Reish vehicle. This forced open the right front door of the Welle vehicle, throwing the decedent out and to the pavement, resulting in his fatal injuries.

Plaintiff bases her claims for relief against Hutcherson and Reish upon allegations of simple negligence. The claim for relief against Welle is based upon two grounds: (1) It is alleged that Welle acted "negilgently and in wilful and wanton disregard for the rights of others," thereby removing him from the protection of the Colorado Guest Statute; and (2) in the alternative, it is urged that if Welle is deemed guilty of only simple negligence, the Colorado Guest Statute is unconstitutional. Plaintiff also urges that her statutory claim for relief under the Wrongful Death Statute, C.R.S. '53, 41-1-1 et seq., is independent of, and has not been modified by, the Guest Statute, C.R.S. '53, 13-9-1.

We do not here attempt to discuss the constitutional issues presented for they have been resolved by the decision of this court in Vogts v. Guerrette, No. 18,834, decided this date.

Plaintiff's claims for relief against the drivers of the first two cars, Hutcherson and Reish, are based upon her allegation that they were negligent in failing substantially to reduce their speed when they saw or could have seen the red warning flare several hundred yards in front of them and off to their right. She assumes that if this had been done that Welle's vehicle would also have slowed up and the accident might not have occurred.

Although in some circumstances a prudent driver of

an automobile might automatically reduce his speed when he sees a warning flare some distance away, we cannot agree that the failure to do so, under the facts here presented, constitutes sufficient evidence of negligence on the part of Hutcherson and Reish to warrant submitting the question of negligence to the jury.

A warning light ahead on the highway should put the driver of an approaching vehicle on notice that there is a potentially dangerous condition ahead, and that he must be ready and able to bring his car to a complete stop if suddenly called upon to do so. Such was the case here. However, the evidence is clear and uncontradicted that Hutcherson did have sufficient control of his vehicle to bring it to a complete stop. Also there is no evidence that Reish did not or could not have stopped his car in adequate time to have avoided an accident. Apparently Welle was the only person involved in the collision who did not have sufficient control of his vehicle to stop when presented with an emergency condition. His failure to do so was the proximate cause of the accident and resultant fatal injury to the decedent. Thus as to both Hutcherson and Reish the motions to dismiss were properly granted.

We must next consider whether under the facts as related here Welle was guilty of such wilful and wanton conduct as to remove him from the protection of the Guest Statute. In this regard we must conclude that Welle's conduct amounted to nothing more than simple negligence and that no wilful and wanton conduct on his part was shown by plaintiff. This being so, no jury question was presented and the motion to dismiss as to Welle was also properly granted.

Plaintiff's contention that the Wrongful Death Statute created a right of action independent of the Guest Statute and is not subject to the limitations the latter imposes, is unacceptable. The Colorado Wrongful Death Statute was enacted in 1872. Prior to its enactment there was no common law right of recovery against

one who tortiously caused the death of another. The Wrongful Death Statute created a new cause of action which did not theretofore exist. It created the only right under which such recovery was possible.

The Guest Statute was enacted in 1931. It provides in pertinent part:

"13-9-1. No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, *death*, or loss in case of accident, unless * * * ." (Emphasis supplied.)

■ There being no recovery for death except under the provisions of the Wrongful Death Statute, and the Guest Statute specifically precluding recovery for death except under the conditions therein specified, the Guest Statute must be held to apply to and limit recovery under the Wrongful Death Statute.

The judgment is affirmed.

MR. JUSTICE HALL specially concurs.

MR. JUSTICE KNAUSS not participating.

MR. JUSTICE FRANTZ dissents.

MR. JUSTICE HALL specially concurring:

I concur with the majority in affirming the judgment of the trial court; however, I do not concur in all of the language contained in the majority opinion.

I am firmly of the opinion that the so-called Colorado guest statute *is unconstitutional* when invoked against one seeking to recover for injuries incurred while riding in an automobile being driven by the host in a negligent manner. My views on the question are amply and ably expressed in the dissenting opinion of Justice Frantz, in the case of *Vogts v. Guerrette*, 351 P. (2d) 851, decided May 2, 1960.

I am equally firm in the opinion that this same statute

*is constitutional* as applied in actions seeking recovery for unlawful death. In such actions the statute does not, nor does it purport to, deprive anyone of a right, inherent, constitutional or otherwise. Rather, it is part and parcel of the wrongful death statute, which grants, rather than takes away, rights. The legislature having granted a right may qualify it in any manner, such as limiting the amount of recovery, specifying the character, kind and quantum of proof required to recover. Such being the nature of the statute and its function, its application in death cases does not offend against any right of the person seeking recovery in conformity with the statutory grant.

The record disclosing no evidence that Welle's negligent conduct could be characterized as wilful, wanton or intentional, Mrs. Taylor has not met the statutory requirements for a recovery and the trial court properly directed a verdict in favor of Welle.

MR. JUSTICE FRANTZ dissenting:

What was said in my dissenting opinion in *Vogts v. Guerrette, et al.,* decided May 2, 1960, is equally appropriate here. But there is more to be said in this case, for it has the additional aspect of death resulting from alleged negligence. Suit was brought by Mrs. Taylor for the wrongful death of her husband, a non-paying guest in the autumbile operated by the defendant Hutcherson.

My views concerning the rights arising from wrongful death, regardless of the grade or quality of the fault producing it, are considered heterodox, but I respectfully urge that they are the only ones consonant with the Constitutions of this state and the United States. That the reported cases do not seem to have accepted or rejected these views — in fact, apparently never discussed them and their efficacy — does not necessarily belie their validity or vitality. My concepts have more

than a latent life — if simple, concise and direct statement of principle in the Constitution means anything.

Simply, concisely and directly stated in Article II (Bill of Rights) are these great truths proclaimed to be true:

"In order to assert our *rights*, acknowledge our *duties*, and *proclaim* the principles upon which our government is founded, we declare:

\* \* \*

"Section 3. Inalienable rights. — All persons have certain *natural, essential and inalienable rights*, among which may be reckoned the *right of enjoying and defending their lives* and liberties; of acquiring, possessing and protecting property; and of *seeking* and *obtaining* their *safety* and happiness.

\* \* \*

"Section 25. Due process of law. — *No person shall be deprived of life*, liberty or property, *without due process of law.*

\* \* \*

"Section 28. Rights reserved not disparaged. — The enumeration in this constitution of certain rights shall not be construed to *deny, impair* or *disparage* others retained by the people." (Emphasis supplied.)

By these words the Constitutional Convention implanted in our Constitution the rights required to be recognized and eternalized by Section 4 of the Enabling Act. For the mandate of that section was and is "That the constitution \* \* \* be republican in form, \* \* \* and *not be repugnant to the constitution* of the United States *and the principles of the declaration of independence."* We are reminded by the Declaration of Independence that all men "are endowed by their Creator with certain *unalienable rights;* that among these are *life,* liberty and the pursuit of happiness. That *to secure these rights, governments are instituted* among men \* \* \*." (Emphasis supplied.)

Thus, the right to life is an inalienable right which

federal and state governments were instituted to secure. Such is the import of the Declaration of Independence; such was directed to be incorporated in the Constitution of this state by the Enabling Act; such the Constitutional Convention complied with in the formation of the Constitution, by declaring that the right to life was a "natural, essential and inalienable" right.

The right to one's life does not contemplate the privilege or possibly the right of another to take such life, through wrongdoing or through negligence, even though it be under the guise of legal sanction. Why? Because government has its cause for being in seeing to it that the right to life is secured, not that a right is bestowed in another to take such life through negligence. Government weakens its right to exist when it acts contrary to its fundamental purpose to protect and enforce the principles of the Bill of Rights.

This is not a case of non-action, but rather of affirmative action by the legislature to destroy a right which government is designed to protect. Where there is non-action, the Bill of Rights, because of its self-executing nature, is enforceable by any appropriate remedy, and I hold that the self-executing nature of the Bill of Rights remains unimpaired by a law in violation of it. *Quinn v. Buchanan,* (Mo.) 298 S.W. (2d) 413; *Perkins v. Cooper,* 155 Okla. 73, 4 P. (2d) 64; *Hoy v. State,* 225 Ind. 428, 75 N.E. (2d) 915.

" * * * Provisions of a Bill of Rights are primarily limitations on government, declaring rights that exist without any governmental grant, that may not be taken away by government and that government has the *duty to protect.* 1 Cooley's Constitutional Limitations 93, 358; Am. Jur. 1092, Sec. 308; 16 C.J.S., Constitutional Law, §199, p. 976. As those authorities show, *any governmental action in violation of these declared rights is void so that provisions of the Bill of Rights are self-executing to this extent.* See also 1 Cooley's Constitutional Limitations 166 note. They do not, however, usually provide

methods or remedies for their enforcement and certainly it is proper and within the legislative power to enact laws *to protect and enforce* the provisions of the Bill of Rights. 11 Am. Jur. 1094, Sec. 309. In the absence of legislation, individuals may enforce and protect these rights from infringement by other individuals by any appropriate common law or code remedy." (Emphasis supplied.) *Quinn v. Buchanan,* supra.

The right to life had its origin in the natural law, is immutable and absolute, and transcends the power of any authority to impair, abridge or abolish it. This right is "not surrendered by entering into organized society." It "existed before society was organized and [is] not surrendered by entering into the organization." *Richmond F. & P. R. Co. v. Richmond,* 145 Va. 225, 133 S.E. 800; and see *West Virginia State Board v. Burnette,* 319 U.S. 624, 87 L.Ed. 1171, 63 S.Ct. 1178, 147 A.L.R. 674; *Bednarik v. Bednarik,* 18 N.J. Misc. 633, 16 A. (2d) 80.

Infused into the Bill of Rights is the right to life and its enjoyment. The introductory sentence of the Bill of Rights ordains that there are *"rights"* and *"duties,"* and since its twenty-eight sections then proceed to declare rights, it is reasonable to suppose that each of the rights enumerated has a correlative duty. In pursuance of the Bill of Rights the legislature implemented the Bill of Rights by providing for a remedy in the event of death caused by negligence or intentional injury. Later, it sought to withdraw a right of action for negligence where the relation of host and guest in an automobile existed and death of the guest resulted from the simple negligence of the host.

The right to life is a natural, essential and inalienable right recognized and preserved as such as a Constitutional right; the duty not to destroy life through fault arises from the natural law, and is recognized and preserved as such as a Constitutional duty. The right to life (and the resourcefulness of the law provides a remedy for its taking through wrongdoing) is derived from the

natural law and given Constitutional sanction; this right and remedy are not counterparts of Lord Campbell's Act, nor are they bestowed by legislative grace. In the original wrongful death statute the legislature sought to protect and enforce the constitutional provision; in the amendment, denying relief for death resulting from negligence of a host-operator of a car to his guest, the legislature has defaulted in a mandatory duty to preserve a right.

Since the law is invalid as to such negligence provisions, Mrs. Taylor could "enforce and protect [this right] from infringement by other individuals by any appropriate common law or code remedy." *Quinn v. Buchanan,* supra. And it will not do to say, "Who has authority to enforce the right?" since the amendment takes away the right where negligence was the cause of death and the Constitution fails to designate who shall have the remedy where the Constitutional right to life has been violated. As previously indicated, the Bill of Rights does not exist in a vacuum. The decedent's estate, the surviving spouse and the decedent's children, if any, are damaged by his wrongful death.

"Our conclusion, without going further into the matter, is that a child today has a right enforceable in a court of law against one who has invaded and taken from said child the support and maintenance of its father, as well as damages for the destruction of other rights which arise out of the family relationship and which have been destroyed or defeated by a wrongdoing third party. Likewise, we are persuaded that because such rights have not heretofore been recognized is not a conclusive reason for denying them." *Daily v. Parker,* 152 F. (2d) 174.

To leave remediless the loss of life by wrongful act would make the right to life a mere shadow devoid of substance. *Hoy v. State,* supra. Loss of life by wrongful act involves a right and a duty. That a right has been infringed means that a duty has been disregarded.

Withdrawal of the remedy was ineffectual, unless a substitute were supplied. It must be remembered that "while the legislature may change the remedy or the form of procedure, attach conditions precedent to its exercise, and perhaps abolish old and substitute new remedies (McClain v. Williams, 10 S.D. 332, 73 N.W. 72, 43 A.L.R. 287; Raining v. Buffalo, 102 N.Y. 308, 6 N.E. 792), it cannot deny a remedy entirely." *Stewart v. Houk,* 127 Ore. 589, 271 Pac. 998, 61 A.L.R. 1236.

According to Section 28 of the Bill of Rights the failure to enumerate rights does not permit of their denial, impairment or disparagement. So much more reason for holding that rights enumerated shall not be denied, impaired or disparaged. The right to life and its correlative duty in any view remain intact and whole.

For the reasons herein expressed, I would hold the attempt of the legislature to withdraw the remedy afforded for wrongful death of an automobile guest, caused by negligence, a nullity.