INDEPENDENT STAVE COMPANY,
INC., a corporation, Respondent,

v.

Ernest D. HIGDON et al., Appellants.

No. 60410.

Supreme Court of Missouri,
En Banc.

Oct. 10, 1978.

Rehearing Denied Nov. 6, 1978.

J. F. Souders, Gruenberg, Souders & Levine, St. Louis, for appellants.

Donald W. Jones, Prewitt, Jones & Karchmer, Springfield, for respondent.

Gordon D. Gee, Kansas City, Leslie W. Bailey, Jr., National Right to Work Legal Defense Foundation, Fairfax, Va., amicus curiae.

FINCH, Judge.

This is an appeal from a judgment permanently enjoining appellants from enforc-

ing a "union security" provision [1] of a collective bargaining agreement. The trial court held that said contract provision violates Mo.Const. art. I, § 2 which provides "that all persons have a natural right to life, liberty, the pursuit of happiness and *the enjoyment of the gains of their own industry* . . .." (Emphasis added.) Resolution of this question requires construction of said constitutional provision which vests jurisdiction in this court. Mo. Const. art. V, § 3. We reverse.

Independent Stave Company, Inc. (hereinafter the company) manufactures barrels. It admittedly is engaged in commerce within the meaning of §§ 2(6) and 2(7) of the National Labor Relations Act, as amended [2] and is within the jurisdiction of the National Labor Relations Board.

Certain of the company's employees were in a bargaining unit represented by the Coopers International Union of North America, AFL–CIO and its Local 42 (hereinafter jointly referred to as the union). A contract between the company and the union expired in August of 1976 and a strike commenced a month later. During the three months long strike, some of the employees continued to work. They submitted resignations from the union in order to avoid union fines for crossing the picket lines. When the strike ended, other employees returned to work.

Another union then sought to represent the employees and in January 1977 the National Labor Relations Board conducted a secret ballot election. The Coopers Union won and was certified as the bargaining agent. After certification, its representatives sought to sign up all employees in the bargaining unit. Meanwhile, the union bargained with the company on a new contract. An agreement effective April 9,

1977, was reached and executed. It included the "union security" clause involved in this case.[3]

On April 28, 1977, the employees who had submitted resignations during the strike wrote to the union seeking to withdraw those resignations. They were advised that under union rules the resignations were not effective during the strike, but had taken effect when the strike ceased on November 24, 1976. As a result, they were told, they would be required to reapply for membership and to pay the initiation fee as well as dues. At that time the initiation fee was $50 but shortly thereafter the initiation fee was raised to $100 by vote of the membership of the local union.

On June 2, 1977, acting pursuant to the "union security" provision, the union advised the company in writing that forty-five employees in the bargaining unit had not joined the union. Their dismissal was requested. Thereafter, seven of those persons joined the union and their names were stricken from the list of requested dismissals. The company did not dismiss the other listed employees as requested by the union. Instead, it instituted this suit against the international union, the local union and their officers to have the "union security" clause declared to be unconstitutional as violative of art. I, § 2 of the Missouri Constitution and to enjoin its enforcement.

In resolving this question, we look first to the provisions of the Labor Management Relations Act, 29 U.S.C. §§ 141–187. That law was enacted by Congress in 1947 pursuant to its power to regulate commerce among the states. U.S.Const. art. I, § 8. Where Congress enacts legislation to govern such commerce, it preempts the field to the exclusion of state constitutional or statutory provisions. *Erie Railroad v. New*

1. This "union security" provision requires employees to become and remain members of the union on and after the 31st day following their employment or effective date of the agreement, whichever is later. If an employee fails to do so, this union may, in writing to the employer, demand the discharge of the employee. The employer, after investigating and determining the employee is not a member, and does not agree to become a member, shall discharge the delinquent employee.

2. Ch. 372, § 2, 49 Stat. 450 (1935) (Current version at 29 U.S.C. § 152 (1970).)

3. There had been a "union security" clause in contracts between the employer and the union dating back to 1955.

*York,* 233 U.S. 671, 34 S.Ct. 756, 58 L.Ed. 1149 (1914). In this instance, however, the legislation indicates that it is not intended to preempt the field.

29 U.S.C. § 157 provides:

*"Employees shall have the right to self-organization, to form, join, or assist labor organizations,* to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment* as authorized in section 158(a)(3) of this title." (Emphasis added.)

29 U.S.C. § 158(a)(3), referred to in § 157, makes it an unfair labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment" for the purpose of encouraging or discouraging membership in a labor organization. However, added thereto is a proviso to the effect that nothing in this or any other statute "shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later . . .."

Finally, the foregoing provisions are qualified by 29 U.S.C. § 164(b) which provides:

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

■ It is clear that by the foregoing sections Congress has provided that a "union security" provision which conforms to the type of agreement described in 29 U.S.C. § 158(a)(3) (as does the one in the contract between the company and the union herein) is permissible and that employees are bound thereby unless the state in which the contract is to be applicable has a law which prohibits such agreements. *Retail Clerks International Association, Local 1625 v. Schermerhorn,* 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). To that extent Congress has not preempted the field. The question for resolution, therefore, is whether Mo.Const. art. I, § 2, prohibits "union security" agreements in Missouri. If it does, then it governs and the "union security" provision in the contract between company and the union is invalid. Otherwise, §§ 157 and 158(a)(3) are applicable and the "union security" agreement is valid and enforceable.

In arguing for affirmance of the trial court's holding that the "union security" provision in the contract between the company and the union violates art. I, § 2 of the Missouri Constitution, the company relies primarily on five decisions of this court. The first of these is *Cheek v. Prudential Ins. Co.,* 192 S.W. 387 (Mo.1917). In that case plaintiff brought suit to recover damages for refusal of defendant to issue him a letter pursuant to Missouri's service letter statute. A second count sought damages for conspiracy with another company to prevent reemployment of plaintiff and others. The court upheld the constitutionality of the service letter statute and held that plaintiff was entitled to maintain a suit for damages based thereon. In discussing that question the opinion refers to that portion of the constitution which is now art. I, § 2, including the language about the right of persons to "the enjoyment of the gains of their own industry." Under that provision, said the court, it is axiomatic that no one has the right to deprive persons by any means of the right to work for anyone who consents for them to work and that one so interfering is liable in damages. However, the court in so stating was not considering the validity of a "union security" provision negotiated as a part of a collective bargaining agreement. It dealt with and settled

only the constitutionality of the service letter statute and plaintiff's right to maintain a suit for damages for refusal of his employer to give him a letter as required by that statute.

The next case relied on by the company is *City of Springfield v. Clouse,* 356 Mo. 1239, 206 S.W.2d 539 (banc 1947), in which the city sought by a declaratory action to obtain a determination of its power to make collective bargaining contracts with labor unions concerning wages, hours, collection of dues and working conditions of city employees. The court held that art. I, § 29 of the Missouri Constitution which provides "[t]hat employees shall have the right to organize and to bargain collectively through representatives of their own choosing" does not apply to any public employees or officers. In so holding the opinion states that art. I, § 29 applies only to employees in the private sector. However, the case did not involve a controversy concerning such employees and did not consider the validity of a "union security" provision in a collective bargaining contract.

The third and fourth cases relied upon by the company are *Bellerive Country Club v. McVey,* 365 Mo. 477, 284 S.W.2d 492 (banc 1955) and *Tallman Company v. Latal,* 365 Mo. 552, 284 S.W.2d 547 (banc 1955). Both were suits to enjoin picketing by a union and to recover damages. In *Bellerive* the court held that where picketing of a not-for-profit country club was not in fact either organizational picketing or advertising picketing but was intended to adversely affect the club's normal operation so as to cause it to intervene and coerce its employees into union membership, such picketing was for an unlawful purpose and should be enjoined. In *Tallman* an injunction was denied because picketing had ceased but the court held that plaintiff's suit for damages resulting from the prior unlawful picketing should be permitted to proceed. Neither of these cases involved a "union security" clause nor whether art. I, § 2 prohibits such a provision.

Finally, the company cites and relies on *Quinn v. Buchanan,* 298 S.W.2d 413 (Mo.

banc 1957). In that case defendant was a processor and seller of meat and meat products. He had five driver-salesmen, three of whom, along with union officers and trustees, brought suit for injunctive relief and damages. The petition alleged that the driver-salesmen organized and then chose the Teamsters Union as their bargaining representative, after which defendant said that he would not allow a union and that those who signed cards for such representation would be fired. The petition stated that the employer refused to meet and bargain, that he discharged three driver-salesmen and induced another to cancel and withdraw his union authorization. The court held that injunctive relief was proper to prevent the employer from coercing employees into withdrawing from the union and rescinding their authorization to the union to act as their collective bargaining representative and from otherwise interfering by coercion with such employees' rights to freely choose the union as their bargaining representative. However, it held that plaintiffs were not entitled to mandatory relief which would require defendant to recognize and bargain with the union. The action of the trial court in dismissing plaintiffs' petition was reversed and the cause was remanded.

None of the foregoing cases involved the inclusion of a "union security" clause in a contract negotiated by an employer and a union representing employees of that union. None of them held that such a provision is prohibited by Mo.Const. art. I, § 2. As a matter of fact, there is language in *Quinn* which would indicate that the court did not consider that art. I, § 2 has that effect. In considering a motion for rehearing in that case the court noted that plaintiffs had cited the case of *Local Union No. 324, International Brotherhood of Electrical Workers, A.F.L. v. Upshur-Rural Electric Cooperative Corp.,* 261 S.W.2d 484 (Tex.Civ.App. 1953), and the fact that it was based on a Texas statute, Tex. [civil] Code Ann. tit. 83, § 5207a(2) which provided "[n]o person shall be denied employment on account of membership or nonmembership in a labor union." The court then went on to say at 420:

"Of course, if we had such a statute we would have a different case." Such statement would indicate that the court considered that Missouri had no statute or constitutional provision which had the effect of the quoted Texas statute.

That this court did not consider that its earlier decisions in *Cheek; City of Springfield; Bellerive Country Club; Tallman* and *Quinn* established that art. I, § 2 prohibited "union security" clauses in a labor contract also may be deduced from the court's statement in *Pfitzinger Mortuary, Inc. v. Dill,* 319 S.W.2d 575 (Mo.1958), in which the court said at 577: "Missouri does not have a so-called right-to-work law . . . ."

While not decisive of the question of whether Missouri had such a law in 1947 when 29 U.S.C. § 164(b) was adopted by the Congress, it is of some significance that in *Retail Clerks* the Supreme Court noted that when said section became law in 1947, twelve states had statutes or constitutional provisions outlawing or restricting the closed shop and related devices which would include "union security" provisions. 345 U.S. at 100, 84 S.Ct. 219. The Court referred to State Laws Regulating Union-Security Contracts, 21 L.R.R.M. 66, which listed those twelve states as Arizona, Arkansas, Georgia, Iowa, Nebraska, Nevada, North Carolina, North Dakota, South Dakota, Tennessee, Texas and Virginia. The Court also referred to H.R.Rep.No.245, 80th Cong., 1st Sess., p. 34 which lists the same twelve states as having laws forbidding "union security" agreements. 345 U.S. at 100, nn. 4 & 5, 84 S.Ct. 219. It also lists fourteen additional states, including Missouri, that "have under consideration laws forbidding compulsory unionism." Obviously, neither Congress nor the U.S. Supreme Court considered that *Cheek; City of Springfield; Bellerive Country Club; Tallman* or *Quinn* held that Mo.Const. art. I, § 2 prohibited "union security" provisions.

We conclude that prior cases cannot be interpreted as having held that Mo.Const. art. I, § 2 prohibits the inclusion of "union security" provisions in labor contracts between an employer and the bargaining agent of its employees.

■ Having so concluded, the question we must decide is whether it should be so construed. We are persuaded that it should not. The language of art. I, § 2 is very general. It says only "that all persons [shall] have . . . the enjoyment of the gains of their own industry . . . ." In this respect it differs substantially from the constitutional provisions and statutes in other states which undertake to prohibit or limit such things as "union security" provisions. For example, Ariz.Rev.Stat. § 23–1302 provides:

"No person shall be denied the opportunity to obtain or retain employment because of nonmembership in a labor organization, nor shall the state or any subdivision thereof, or any corporation, individual, or association of any kind enter into an agreement, written or oral, which excludes a person from employment or continuation of employment because of nonmembership in a labor organization."

Georgia has several provisions dealing with this question. Ga.Code Ann. § 54–902 provides:

"No individual shall be required as a condition of employment, or of continuance of employment, to be or remain a member or an affiliate of a labor organization, or to resign from or to refrain from membership in or affiliation with a labor organization."

Section 54–903 provides:

"No individual shall be required as a condition of employment, or of continuance of employment, to pay any fee, assessment, or other sum of money whatsoever, to a labor organization."

Section 54–904 provides:

"Any provision in a contract between an employer and a labor organization which requires as a condition of employment, or of continuance of employment, that any individual be or remain a member or an affiliate of a labor organization, or that any individual pay any fee, assessment, or other sum of money whatsoever, to a labor organization, is hereby declared

to be contrary to the public policy of this State, and any such provision in any such contract heretofore or hereafter made shall be absolutely void."

Section 54–905 provides:

"It shall be unlawful for any employer to contract with any labor organization, and for any labor organization to contract with any employer, so as to make it a condition of employment of any individual, or of continuance of such employment, that such individual be or remain a member of a labor organization, or that such individual pay any fee, assessment, or other sum of money whatsoever, to a labor organization."

Nebraska has a constitutional provision, art. XV, § 13, which provides:

"No person shall be denied employment because of membership in or affiliation with, or resignation or expulsion from a labor organization or because of refusal to join or affiliate with a labor organization; nor shall any individual or corporation or association of any kind enter into any contract, written or oral, to exclude persons from employment because of membership in or nonmembership in a labor organization."

This provision is implemented by Neb.Rev. Stat. § 48–217.

North Carolina has a statute, N.C.Gen. Stat. § 95–78, which provides:

"The right to live includes the right to work. The exercise of the right to work must be protected and maintained free from undue restraints and coercion. It is hereby declared to be the public policy of North Carolina that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization or association."

Statutes and constitutional provisions of the other states which have undertaken to prohibit or restrict "union security" provisions have been equally specific. We are cited to no instance in which courts of other states have held that general constitutional or statutory language comparable to art. I, § 2 of the Missouri Constitution prohibits "union security" provisions in labor contracts.

In the arguments made to the court herein, it was urged that the very general nature of the language about persons being entitled to the gains of their own industry means literally that persons are entitled to all they earn and that they cannot be made to surrender any portion thereof to anyone except, presumably, the government itself. We cannot accept that construction. Carried to the logical conclusion, it would mean that an individual is free to work for anyone who will hire him for whatever they agree upon and at whatever times they fix. That would mean that insofar as Missouri law is concerned there could be no minimum wage law or statutory limitations on hours. Under such construction there could be no collective bargaining agreements which would establish wage rates or hours of work or provide for contributory pension or insurance plans for members of the bargaining unit unless the individual personally ratified such provisions. Such construction of art. I, § 2 would limit substantially the provisions of Mo.Const. art. I, § 29 which provides that employees may organize and bargain collectively through their chosen collective bargaining representatives. In our judgment art. I, § 2 is not susceptible to such construction.

■ We hold that art. I, § 2 of the Missouri Constitution does not prohibit the inclusion of a "union security" provision in a collective bargaining agreement. That being true, the "union security" provision in the contract between the company and the union is not prohibited by Missouri law and is valid and enforceable under the provisions of 29 U.S.C. §§ 157 and 158(a)(3).

■ Respondent did not file a motion to dismiss the appeal herein but does make the point in its brief that appellants' original brief does not comply with Rule 84.04(d), V.A.M.R. in that its points relied on are abstract statements of law and do not state the actions or rulings of the trial court of which complaint is made or wherein and why they are erroneous. The brief is defi-

cient in this respect. See our opinion in *Thummel v. King*, No. 60340, 570 S.W.2d 679 (Mo. banc 1978). However, some of those deficiencies are supplied in appellants' reply brief and we have concluded that the appeal should not be dismissed.

The judgment of the trial court is reversed.

MORGAN, C. J., BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and WELBORN, Special Judge, concur.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.